COMMONWEALTH *vs.* OTIS JONES, JR.

Suffolk.  May 3, 1972. — June 5, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Robbery.*

Discussion of the elements of robbery, as distinguished from larceny. [85–87]

Snatching of property from a victim, without more, involves the requisite element of force to permit a finding of robbery. [87–89]

Evidence in an unarmed robbery case, that the victim saw the defendant approach her, that she "felt something off . . . [her] arm" and "realized . . . [her pocketbook] was gone," and that she was "petrified"·and "scared to death" warranted a finding of guilty. [89–90]

In an unarmed robbery case, evidence of the closing of an automobile door on the victim's foot as she knelt on a seat with her feet outside the car looking for something on the floor, coupled with disappearance of her pocketbook at approximately the same time, was ample to permit an inference that the pocketbook was taken by the defendant while it was inside the car with the victim; and it was not necessary that the Commonwealth show that the victim was physically in possession. [90]

---

[1] Habeas corpus was granted on other grounds. *Eisen* v. *Picard*, 452 F. 2d 860, 865 (1st Cir.).

INDICTMENTS found and returned in the Superior Court on January 15, 1971.

The cases were tried before *Hudson*, J.

*Maurice F. Ford* for the defendant.

*Gerald F. Muldoon*, Assistant District Attorney (*Daniel C. Mullane* with him) for the Commonwealth.

TAURO, C.J.   The defendant appeals under G. L. c. 278, §§ 33A–33G, from convictions on two indictments each charging an unarmed robbery.   G. L. c. 265, § 19.   He assigns as error the refusal of the judge to direct verdicts on so much of the indictments as charged unarmed robbery, on the basis that the evidence in each case disclosed at most larceny and not robbery.

The pertinent evidence was as follows: On the evening of December 14, 1970, at approximately 6:30 P.M., Mrs. Florence Spring and her daughter, Miss Madeline Spring, left their apartment in Dorchester to go shopping by automobile.   Each lady was carrying a pocketbook. Florence Spring opened both front and rear doors on the passenger's side in search of a snow scraper with which to remove snow from the car.   She was unable to find it. Madeline Spring then knelt down on the front seat with feet extended outside the car and, leaning across the seat, she felt with her hand on the floor for the scraper. Meanwhile, Florence Spring opened the trunk of the car, took out a stick, and started to clean the rear window from the driver's side.

Madeline Spring testified that, while feeling along the floor of the front seat, she realized she "couldn't move . . . [her] foot," that "[f]or a minute" she was "stunned," but that then she turned back and saw "a black face with eyes" in the window and she "knew somebody was holding the door on . . . [her] foot."   Miss Spring stated that she became "petrified" and screamed; that she looked up and put her hand on the horn; and that while in this position, she observed a "shadow . . . [go] by the driver's side towards the back of the car."   The door was then released and she got out of the car.   In answer to the

question, "At that time, did you observe your pocketbook?" she indicated, "No."

Florence Spring testified that, upon hearing her daughter's scream, she "started . . . to the front of the car"; that she saw a young man on the passenger's side by the headlight; that this young man started across the street but turned and approached her; and that he "grabbed . . . [her] pocketbook." She indicated that the pocketbook was on her arm at the time. She described the taking as follows: "I really couldn't tell you what he did. All I knew he was standing there. Next thing I knew, I felt something off my arm. I realized my bag was gone." In answer to the question, "[H]ow did you feel?" Mrs. Spring said: "Petrified. . . . I was scared to death." She also testified that, after the pocketbook was taken, "I said it belonged to me, and I wanted it, and he started towards the sidewalk . . . and I started after him with the stick in my hand."

About two hours after the incidents described by the victims, the police arrested the defendant and three other males in his company. They found credit cards and other articles from the women's pocketbooks in the possession of the defendant and one of the other men.[1] Subsequently, at trial, Florence Spring identified the defendant as the young man who had taken her pocketbook. Madeline Spring was unable to identify the defendant or any codefendant as either the face or the shadow she had seen during the crime.

1. We begin with a general discussion of the elements which distinguish robbery from larceny.

The present unarmed robbery statute follows substantially the language of predecessor statutes, the first en-

---

[1] The four suspects were tried together. In each case against the codefendant who was found with credit cards and other stolen articles, the judge directed verdicts of not guilty on so much of each indictment as charged unarmed robbery, and the jury convicted him on each indictment reduced to larceny. The other two codefendants were acquitted of any participation in the crimes, after their motions for directed verdicts were allowed.

acted in 1804. Compare G. L. c. 265, § 19, with St. 1804, c. 143, § 7; Rev. Sts. c. 125, § 15; Gen. Sts. c. 160, § 24; Pub. Sts. c. 202, § 24; and R. L. c. 207, § 19. We have construed this language as restating the common law of robbery. See *Commonwealth* v. *Clifford*, 8 Cush. 215, 217. Under our statutes, as at common law, in order to sustain a charge of robbery, there must be proof of a larceny [2] (1) "from . . . [the] person," and (2) "by force and violence, or by assault and putting in fear." G. L. c. 277, § 39. See *Commonwealth* v. *Novicki*, 324 Mass. 461, 464–465. See also LaFave and Scott, Criminal Law, 692; Anderson, Wharton's Criminal Law & Procedure, § 545. In other words, although it carries a separate label, "robbery is but an aggravated form of larceny." *People* v. *Gallegos*, 130 Colo. 232, 235. See *Commonwealth* v. *Mahoney*, 331 Mass. 510, 513. See also Perkins, Criminal Law (2d ed.) 280; 46 Am. Jur., Robbery, § 3.

The common law came to regard robbery as a more serious offence than larceny because of the added element of personal violence or intimidation. 4 Blackstone, Commentaries (Cooley, 4th ed.) 242–243. 3 Co. Inst. 68. The exertion of force, actual or constructive, remains the principal distinguishing characteristic of the offence.[3]

---

[2] Larceny as an element of robbery means "[t]he taking and carrying away of [the] personal property of another . . . against his will . . . with intent to steal" (G. L. c. 277, § 39). See LaFave and Scott, Criminal Law, 692; Anderson, Wharton's Criminal Law & Procedure, § 545. Although larceny was so restricted at common law (*Commonwealth* v. *James*, 1 Pick. 375, 383), by statute it has been enlarged to include the formerly separate offences of embezzlement and obtaining money or property by false pretences. For a history of the larceny statute (G. L. c. 266, § 30), see *Commonwealth* v. *Kiernan*, 348 Mass. 29, 53, n. 20.

[3] Although the proposed new criminal code substantially alters the present statutory provisions (G. L. cc. 263–274), the revision commission maintains this fundamental distinction between robbery and theft. See proposed new G. L. c. 266, §§ 16–20, as contained in Proposed Criminal Code of Massachusetts, 118—122. "Robbery is a major offense under § 16, as it is under G. L. c. 265, §§ 17, 19 and 21. Section 16 (a) specifies two elements of robbery, the taking of property of another from his person or in his immediate presence, and the use of force to overcome resistance to the taking, to retain the taken property after the taking, or to compel the victim to deliver the property." *Id.* at 118.

*Commonwealth* v. *Novicki, supra,* at 464. *Commonwealth* v. *Beaulieu,* 333 Mass. 640, 644. *Commonwealth* v. *McCarthy,* 360 Mass. 566, 567–568. Because the requirement is stated in the disjunctive, if there is actual force, there need be no fear (constructive force), and vice versa. *Commonwealth* v. *Humphries,* 7 Mass. 242, 244. Whether actual or constructive force is employed, the degree of force is immaterial so long as it is sufficient to obtain the victim's property "against his will" (G. L. c. 277, § 39). Anderson, Wharton's Criminal Law & Procedure, §§ 555–557. Similarly, in every case there must be a causal connection between the defendant's use of violence or intimidation and his acquisition of the victim's property. LaFave and Scott, Criminal Law, 696–702. Anderson, Wharton's Criminal Law & Procedure, § 559. 46 Am. Jur., Robbery, § 19. See *Commonwealth* v. *Novicki, supra,* at 465. See generally Hale, P. C. (1847 ed.) 534; 77 C. J. S., Robbery, §§ 11–14.

The element of "from the person" is the other distinctive aspect of robbery. Although some statutory definitions of the offence, including our own (G. L. c. 277, § 39), speak of a taking "from . . . [the] person" without adding "or in his presence," a larceny in the presence of the victim is sufficient to constitute robbery. *Commonwealth* v. *Mahoney,* 331 Mass. 510, 513. *People* v. *Braverman,* 340 Ill. 525, 530–531. *State* v. *Deso,* 110 Vt. 1, 6, and cases cited. "[The phrase 'or in his presence'] adds nothing other than emphasis because, as pointed out by Coke, where deprivation is accomplished by violence or intimidation, 'that which is taken in his presence is in law taken from his person.'" Perkins, Criminal Law (2d ed.) 282, quoting 3 Co. Inst. 69. An object is deemed to be within the presence of the victim if it is within his area of control. *Commonwealth* v. *Homer,* 235 Mass. 526, 533. Anderson, Wharton's Criminal Law & Procedure, § 553. 77 C. J. S., Robbery, § 9, at 455.

2. The question whether the snatching or sudden taking of property constitutes robbery has arisen in other jurisdictions although not in Massachusetts. Cf. *Com-*

*monwealth* v. *Ordway*, 12 Cush. 270.[4]   In Kentucky, the rule is that snatching, without more, involves the requisite element of force to permit a jury verdict on a charge of robbery.   See *Jones* v. *Commonwealth,* 112 Ky. 689, 692–695; *Brown* v. *Commonwealth,* 135 Ky. 635, 640. According to the rule prevailing in most jurisdictions, however, snatching does not involve sufficient force to constitute robbery, unless the victim resists the taking or sustains physical injury, or unless the article taken is so attached to the victim's clothing as to afford resistance.[5] See LaFave and Scott, Criminal Law, 696–697; Anderson, Wharton's Criminal Law & Procedure, § 561; 46 Am. Jur., Robbery, § 21; 77 C. J. S., Robbery, § 17.   See generally 57 L. R. A. 432.

We prefer the Kentucky rule on purse snatching.   The majority jurisdiction rule, in looking to whether or not the victim resists, we think, wrongly emphasizes the victim's opportunity to defend himself over the willingness of the purse snatcher to use violence if necessary.   See Note, 23 J. Cr. Law, 111, 115.   Historically, however, the law has

---

[4] In the *Ordway* case, the defendants were not charged with robbery but with assault with intent to rob, not being armed.   Rev. Sts. c. 125, § 16 (now G. L. c. 265, § 20).   The evidence was that the defendants "suddenly snatched" two bank bills from the hand of one Buzzell "without any force."   One defendant, however, touched Buzzell's hand, but the victim "did not think the defendants had any intention of injuring . . . his person."   In the absence of any threat of bodily injury, we concluded: "[T]here . . . [was] no intentional touching . . . amounting to an assault."   There is no assault in these circumstances unless the force used is sufficient to produce either bodily injury or a reasonable apprehension of bodily injury.   See Anderson, Wharton's Criminal Law & Procedure, § 382.   Compare *Commonwealth* v. *Slaney,* 345 Mass. 135, 138–139.

[5] The cases include *Bauer* v. *State,* 45 Ariz. 358, 363–364; *People* v. *Church,* 116 Cal. 300, 302–303; *People* v. *Chambliss,* 69 Ill. App. 2d 459, 464–467; *Shinn* v. *State,* 64 Ind. 13, 17–18; *State* v. *Adams,* 406 S. W. 2d 608, 610–611 (Mo.); *State* v. *Houston,* 451 S. W. 2d 37, 39 (Mo.); *State* v. *Trexler,* 2 Car. Law Rep. 90, 93–95 (N. C.); *Marks* v. *State,* 69 Okla. Cr. 330, 338–340, and cases discussed therein; *Jones* v. *State,* 467 S. W. 2d 453, 454 (Tex. Cr. App.), and cases cited therein; *State* v. *Parsons,* 44 Wash. 299, 301–302; *State* v. *Austin,* 60 Wash. 2d 227, 232.   To the same effect are the early English cases.   See *Rex* v. *Baker,* 168 Eng. Rep. 247, and cases discussed in editor's footnote, 247–248.   The rule has been modified by statute in at least two American jurisdictions.   D. C. Code Anno. § 22–2901.   Ga. Code Anno. § 26–1901. See *Turner* v. *United States,* 57 U. S. App. D. C. 39, 40; *Hunt* v. *United States,* 115 U. S. App. D. C. 1, 4.

singled out the robber from other thieves because of his readiness to inflict bodily injury upon his victims.[6] In a snatching or sudden taking, so long as the victim is aware of the application of force which relieves him of his property, the crime is, at least to some degree, "against . . . [the victim's] will." G. L. c. 277, § 39. Clearly, more is involved than in a mere stealthy taking where the victim has no present realization of the theft. See Anderson, Wharton's Criminal Law & Procedure, § 560. In the circumstances of a purse snatching, we believe the force applied is sufficient to make the crime a robbery, even though the application of force may, in practice, be so quick as to deny the victim any opportunity to resist.

3. We consider first the indictment arising from the taking of Florence Spring's pocketbook.

The defendant argues that the evidence does not disclose the use of force, actual or constructive, to take the victim's property. It is conceded that the Commonwealth was not required to show both actual *and* constructive force. See *Commonwealth* v. *Humphries*, 7 Mass. 242, 244.

Snatching necessarily involves the exercise of some actual force. For the reasons stated, *supra,* we hold that, where, as here, the actual force used is sufficient to produce awareness, although the action may be so swift as to leave the victim momentarily in a dazed condition, the requisite degree of force is present to make the crime robbery. In any event, Mrs. Spring testified that she was "[p]etrified." And also: "I was scared to death." Whether her fear aided the defendant in effecting the taking, or merely arose afterwards as the defendant argues, was a question properly for the determination of

---

[6] "The ordinary citizen feels himself able to guard against surreptitious larceny . . . to some extent, by his own wits or caution. But he abhors . . . [the robber whose] hardihood . . . enables him to carry out his purpose in the presence of his victim and over his opposition." Am. Law Inst., Model Penal Code, § 222.1, Comments (Tent. Draft No. 11, 1960).

the jury. There is no reason for upsetting their factual determination.

*Commonwealth* v. *Novicki*, 324 Mass. 461, relied upon by the defendant, is readily distinguishable on the facts. In the *Novicki* case, the alleged robber had left the victim's presence undetected and was in the process of leaving through a door before he was noticed. At 463–464. In these circumstances, there was no basis for a jury finding that the victim's fear played a part in the larceny. By contrast, in the instant case, Mrs. Spring watched the defendant approach her, and she became aware of the taking as it occurred. The jury could permissibly infer from the totality of the circumstances that the victim's fright arose simultaneously with, and aided the defendant in, the taking.

4. Concerning the other indictment, the defendant contends that the evidence is inconclusive as to both where and when Madeline Spring's pocketbook was taken.

Although no testimony was offered as to the precise location of Miss Spring's pocketbook at the moment of the taking, we think the evidence presented was ample to permit an inference that the pocketbook was inside the car with the victim when taken. It was not necessary that the Commonwealth show that she was physically in possession. See *Commonwealth* v. *Homer*, 235 Mass. 526, 533; *Commonwealth* v. *Mahoney*, 331 Mass. 510, 513. The closing of the car door on Miss Spring's foot was sufficient evidence, coupled with the disappearance of her purse at approximately the same time, to allow the jury to infer the requisite causal relationship between the force and the taking.

5. There was no error in either case in refusing to direct a verdict of not guilty on the charge of unarmed robbery.

*Judgments affirmed.*