COMMONWEALTH vs. DENNIS KING. No. 91-P-1167. July 22, 1992. *Homicide. Practice, Criminal*, Competency to stand trial, Argument by prosecutor. *Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Waiver. Evidence*, Explanation of previous testimony, Photograph.

The defendant was indicted by a Middlesex County grand jury for first degree murder and convicted by a jury of murder in the second degree. On appeal the defendant has raised several issues, none of which we find to be meritorious.

1. *Competency to stand trial.* The defendant argues that the judge erred by finding him competent to stand trial. In support of his argument, the

---

defendant claims that he was unable to assist in the preparation of his defense because he heard the voice of an imaginary friend who threatened to punish him.

Two evidentiary hearings were held to determine the defendant's competency to stand trial. At the conclusion of the first hearing, he was found incompetent and sent to Bridgewater State Hospital. Later, he was found competent to be returned to court for further disposition of the charges against him. A second competency hearing was held. At that hearing, the judge heard testimony from a psychologist and from the defendant. The psychologist testified that in his opinion the defendant was competent. At the conclusion of the hearing, the judge ruled that the defendant was competent. The judge applied the proper legal standard: "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). There was ample support in the record for the judge's conclusion, *Commonwealth* v. *Cullen*, 18 Mass. App. Ct. 644, 644-645 (1984), and there was no error.

2. *Custodial interrogation.* The defendant claims that the police obtained statements from him while he was in custody and prior to giving him Miranda warnings.

In order to determine whether the defendant was in custody a court looks to whether, "from the point of view of the person being questioned, the interrogation took place in a coercive environment — by reference to objective indicia." *Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984). The inquiry focuses on a variety of factors: "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant's arrest." *Id.* at 737. The defendant was first questioned at his girlfriend's house. That questioning was informal, there were no restraints put on the defendant, and there is no indication in the record that at that time the defendant was even the focus of the investigation. The police then asked the defendant if he would give them a written statement at the police station, and he agreed. The defendant drove his car from his girlfriend's house to the police station, with a police officer and the defendant's girlfriend riding along with him as passengers. Nothing was said during the ride about the murder investigation. At the police station, the defendant was asked a series of questions concerning his whereabouts at the relevant time. The interrogation was at first merely inquisitive and not accusatory. When the defendant began to make incon-

sistent statements, however, the police gave the defendant his Miranda warnings. Before that he was not in custody.

The defendant claims that his waiver was not knowingly or intelligently made. He argues that he had only a limited education and, as a result, could not have made a valid waiver. We reject the defendant's claim. We note that he had been employed in the past, lived independently, and had had prior contact with the law. We cannot say that the defendant's limited intelligence precluded him from making an effective waiver of his rights. See *Commonwealth* v. *Medeiros*, 395 Mass. 336, 347 (1985). There is no evidence that the defendant was tricked or cajoled into giving a statement. *Id.* at 346.

3. *Prosecutor's closing argument.* The defendant did not testify at the trial. He claims that the prosecutor's closing argument violated his constitutional right to remain silent, pointing to the prosecutor's labeling of certain facts in her argument as "not in dispute" and arguing that, by employing this phrase in her closing argument, the prosecutor gave the jury the impression that they had to accept those statements as true because the defendant failed to dispute them. Of course, a prosecutor cannot refer to the defendant's failure to take the stand. *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 343 (1987). We do not, however, interpret the prosecutor's use of the "not in dispute" terminology as directed at the defendant's failure to testify. *Commonwealth* v. *Feroli*, 407 Mass. 405, 409 (1990). Instead, it is apparent from the record that the prosecutor was addressing defense counsel's closing argument that the defendant, though present, did not commit the crime. Since "[c]ounsel may attempt to assist the jurors in analyzing the evidence by suggesting what conclusions they should draw from the evidence," *Commonwealth* v. *Cosme*, 410 Mass. 746, 750 (1991), we conclude that the prosecutor's remarks, which perhaps might have been better worded, were not violative of the defendant's constitutional right to remain silent.

4. *Other issues.* We find the other issues raised by the defendant also to be lacking in merit, and we comment only briefly on a few of them.

a. *Admission of prior consistent statement in evidence.* The defendant alleges that it was error for the judge to allow the Commonwealth to elicit from a witness an explanation for an inconsistency in her testimony. The witness testified on direct examination that on the night of the murder she overheard the defendant say, "We've got a lot of time to do this," to his codefendant. That statement was made at 1:10 A.M., just as they were leaving the witness's home. On cross-examination, she acknowledged that in her testimony to the grand jury she had stated that the defendant made the statement at 10:00 P.M., not at 1:10 A.M. as she had testified on direct examination. On redirect examination, after again stating that her current memory was that the defendant made the statement at 1:10 A.M., the prosecutor, over objection, asked her about a prior statement she had made to the police the day after the victim's body was found. After refreshing her

recollection with the police report, she remembered that she had told the police that the defendant made the statement at 10:00 P.M. She stated that the defendant actually made the statement twice but she could not remember the first time he made the statement. She did recall his making the statement at 1:10 A.M.

The defendant contends that admitting the prior statement made to the police the day after the murder may have played a critical role in the jurors' deliberations, and thus was unfairly prejudicial to the defendant. We disagree; the witness's testimony regarding her statement to the police was merely an explanation of the apparent inconsistency and not an attempt to admit a prior consistent statement. That was permissible. See *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982); *Commonwealth* v. *DiLego*, 387 Mass. 394, 399 (1982); *Commonwealth* v. *Errington*, 390 Mass. 875, 880 (1984).

b. *Photographs of the victim.* The defendant argues that the judge erred in admitting in evidence a photograph showing the victim in his military uniform before the murder and other photographs depicting the victim's fatal injuries. The admission of this type of evidence is left to the judge's discretion. *Commonwealth* v. *Medeiros*, 395 Mass. at 351. *Commonwealth* v. *Glowacki*, 398 Mass. 507, 512 (1986). The photo of the victim in uniform was relevant for the purpose of identification as well as to show how he appeared before he was murdered. Because the defendant was tried for first degree murder on the theory of extreme atrocity or cruelty, the photographs depicting the victim's wounds were relevant. *Commonwealth* v. *Glowacki, supra. Commonwealth* v. *Richenburg*, 401 Mass. 663, 672 (1988).

c. *Denial of motion for a required finding of not guilty.* The defendant claims that, although the evidence showed that he intended to hurt the victim, it was not sufficient to demonstrate that he intended to kill him, and thus, the judge erred in denying the defendant's motion for a required finding of not guilty of murder. We do not agree. The evidence demonstrated that the defendant intended to kill or do grievous bodily harm to the victim or that he intended to do an act creating a plain and strong likelihood that the victim's death or grievous harm would follow. Contrary to the defendant's claim, there was ample evidence presented from which, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

*Judgment affirmed.*

*Elliot M. Weinstein* for the defendant.
*Kevin J. Mahoney*, Assistant District Attorney, for the Commonwealth.