COMMONWEALTH vs. RALPH LASHWAY
(and a companion case[1]).

No. 93-P-1003.

Hampden. January 13, 1994. - June 20, 1994.

Present: BROWN, KAPLAN, & GREENBERG, JJ.

*Robbery. Joint Enterprise. Practice, Criminal*, Required finding, Argument by prosecutor, Lesser included offense. *Larceny*.

Evidence at the trial of two defendants on indictments for unarmed robbery was sufficient for the jury to conclude with respect to one defendant that property was "take[n] from the person" of the victim by means of "force and violence" or "by assault and putting in fear." [679-681]

Evidence at the trial of a defendant on an indictment for unarmed robbery on the theory of joint venture was insufficient with respect to the necessary mental state required, and the defendant was entitled to a finding of not guilty. [681-682]

At the trial of indictments the prosecutor's remark in closing argument that "there is no other evidence before you" could not be construed as a comment on the defendants' not having testified, considering the context. [682]

In the circumstances of a trial on an unarmed robbery indictment where there was no basis in the evidence for the judge to have granted the defendant's request for an instruction on the lesser included offense of simple assault, the request was properly denied. [682-683]


INDICTMENTS found and returned in the Superior Court Department on August 21, 1991.

The cases were tried before *William W. Simons*, J.

*Jeffrey L. Baler* for Ralph Lashway.

*William M. Leonard* for Clinton Millette.

*Jane Davidson Montori*, Assistant District Attorney, for the Commonwealth.

---

[1]Commonwealth vs. Clinton Millette.

KAPLAN, J. The Hampden County grand jury on August
21, 1991, indicted Ralph Lashway[2] and Clinton Millette for
unarmed robbery (G. L. c. 265, § 19[*b*]), and the case was
tried to a jury in March, 1992. From judgments of conviction
upon guilty verdicts the defendants appeal.

The victim, Walter Johnson, a bystander, Richard Carle,
and a police officer testified for the Commonwealth. The de-
fendants cross-examined but did not offer proof on their own
behalf.

A jury could have seen the episode as follows. On the way
home on the evening of April 7, 1991, Johnson picked up a
soda in the Peter Pan bus terminal, Springfield, and, continu-
ing his walk, came out the back door of the terminal. The
evening was warm, so his jacket was slung over his shoulder.
An orange customized van pulled up near Johnson. Thinking
the driver wanted directions, Johnson stepped next to the
van. He did not recognize the van or its two occupants; he
noticed they smelled of alcohol. The driver, the defendant
Lashway, asked, "How are you feeling?" Johnson answered,
"I'm feeling all right." Lashway struck Johnson on the side
of his face. Lashway got out of the van, and he and Johnson
began to tussle, the pair moving toward the area behind the
van. In the short course of the fight Lashway, in grabbing at
Johnson, grabbed his denim jean jacket, but at some point it
fell to the ground. With the fight continuing, the defendant
Millette, the passenger, left the van and approached the men
to a distance of about five feet. Now Carle, a bus driver who
had just gotten off work, coming upon the fight, shouted,
"Hey, cut that out." Johnson pulled himself away from
Lashway and went over to Carle. According to Carle, John-
son was shaking all over, terrified. Lashway picked up John-
son's jacket and waved it at him; he said, "Is this what you
want? . . . Well, you're not going to get it." Johnson said,
"You're not going to get away with it," and "rattled off" the
van's license plate number. Johnson said he didn't try to re-

---

[2]The indictment was later amended to indicate that Lashway's true
name is Mark S. Smith.

trieve his jacket because he was scared and there were two of them; he thought they might have weapons.

Lashway and Millette got into the van and drove off. Johnson went immediately to a phone and called the police, describing the men and the van with its license number. Shortly, a police car met Johnson, and the police and Johnson separately went on a prowl. In a half hour or so, the police located a van three blocks from the bus station matching the description and license number. Johnson identified the pair in the van as the men involved, and the jacket Millette was wearing when caught as the one taken from him. (Johnson said Millette was not wearing a jacket at the fracas.) The men were arrested on the spot, but the jacket was not taken, evidently because the police had some scruple about the identification of a common garment. The $150 in cash and other items that Johnson said he carried in his jacket were not found in the one worn by Millette, or in the van.

1. *Sufficiency of evidence.* By motions for required findings of not guilty, the defendants raised the question of the sufficiency of the evidence under the statute, which denounces a taking of property from the person of another by means of assault or putting in fear (the actor not being armed with a dangerous weapon).[3]

Assuming the (intentional) taking, was it "from the person" of Johnson in the sense of the statute? Surely so. "While the statute[4] speaks of a taking from the victim's 'person,' the offense is understood 'to include the common law conception of taking in a victim's "presence" . . . and . . . cover[s] cases where the victim could have prevented the taking had he not been intimidated.' " *Commonwealth* v.

---

[3]General Laws c. 265, § 19(*b*), as appearing in St. 1981, c. 678, § 4: "Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years."

[4]In the cited case, the offense was armed robbery but the principle is the same.

*Rajotte,* 23 Mass. App. Ct. 93, 95-96 (1986), quoting from *Commonwealth* v. *Stewart,* 365 Mass. 99, 108 (1974). Further about a person's "presence," see *Commonwealth* v. *Jones,* 362 Mass. 83, 87 (1972). See also *Commonwealth* v. *Homer,* 235 Mass. 526, 533-534 (1920); *Commonwealth* v. *Mahoney,* 331 Mass. 510, 513 (1954).[5]

The main contested issue was whether there was sufficient evidence that the taking was accomplished by means of force or intimidation. Given the assault, the menacing presence of the two men, the taunting of Johnson with the uplifted jacket, and the evidence of fear on Johnson's part, the defendants would still suggest that the so-called "causation" factor is not satisfied: the taking, they say, was distinct from the force or fear — the taking, forsooth, came later. Were this so, were the taking quite separate, only larceny from the person, G. L. c. 266, § 25(*b*), would apply.[6] See *Commonwealth* v. *Davis,* 7 Mass. App. Ct. 9, 10-11 (1979). Referring to our statement of the facts, we think the connection or relation needed to make out the robbery is clear enough. Indeed, although the point hardly needs mention in the present case because of the strength of the facts, the effect of the decided cases is that the nexus between the force or fear and the taking may be relatively loose and yet encompass a robbery. See *Commonwealth* v. *Jones,* 362 Mass. at 89-90 (sufficient to show that the use of force or the victim's being put in fear occurred at "approximately the same time" as the taking); *Commonwealth* v. *Sheppard,* 404 Mass. 774, 778 (1989) (even though use of force occurred after taking, jury could find that the force was used to "facilitate the larceny"); *Commonwealth* v. *Assad,* 19 Mass. App. Ct. 1007, 1008-1009 (1985) (rejecting argument that attempted robbery was not shown because force was only used to facilitate escape: sufficient that force was "connected to the objective of steal-

---

[5]The defendants criticize the judge's instruction defining unarmed robbery, but the criticism fails.

[6]General Laws c. 266, § 25(*b*), as appearing in St. 1981, c. 678, § 5: "Whoever commits larceny by stealing from the person of another shall be punished by imprisonment in the state prison for not more than five years or in jail for not more than two and one-half years."

ing property"); *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. at 94-95 (force used after taking was effected, sufficient for robbery: "a fact finder may look at such an episode 'as a continuum,'" quoting from *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619, 624 [1986]). In regard to "causation," our cases thus approach the Model Penal Code which, in its definition of robbery, speaks of force or the threat of force occurring "in the course of committing a theft," including even the period of flight after the commission. Model Penal Code § 222.1, & comment 2 (Official Draft 1980).

Thus Lashway could readily have been found guilty as the principal actor in the event. Millette's criminal responsibility depended on whether he so far associated himself with Lashway in the enterprise and participated in the commission of the crime as to become a "joint venturer" with Lashway. The Commonwealth would suggest that a jury might believe that Lashway and Millette, lubricated by drink, were in the streets that evening looking for trouble and, if possible, for gain, and it was understood one would assist and support the other in any engagement. In fact, Millette left the van and came toward Lashway as he struggled with Johnson, and, according to Johnson's testimony, Millette wound up with the jacket. But the supposed understanding would rest on speculation. As to Millette's actions, the necessary state of mind was unproved even by broad implication, and the ultimate wearing of the jacket could not supply the gap reflexively. A jury could not find beyond a reasonable doubt that Millette was guilty of unarmed robbery. "The theory underlying joint enterprise is that one who aids, commands, counsels, or encourages commission of a crime *while sharing with the principal the mental state required for the crime* is guilty as a principal." *Commonwealth* v. *Champagne*, 399 Mass. 80, 86 (1987) (emphasis added), quoting from *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). See *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973). Comparable cases, where joint venture remained unproved, are: *Commonwealth* v. *Walsh*, 407 Mass. 740, 743-745 (1990); *Commonwealth* v.

*Chinn*, 6 Mass. App. Ct. 714, 716-718 (1978); *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 410-413 (1986).[7]

2. *Prosecutor's remark.* Referring to the testimony of Johnson and Carle about the episode of taking, the prosecutor said, "there is no other evidence before you." The defense complained that this amounted to a comment on the defendants' failure to take the stand. Would the jury understand it so? This is mostly a matter of context. Here the defense in its closing argument had attempted to picture Johnson as a liar and his testimony as unbelievable and unsubstantiated. Countering this impugning of Johnson's credibility, the prosecutor argued that Johnson's testimony had been significantly corroborated by the outsider Carle and there was no contradictory evidence from any source: it was in this connection that the prosecutor used the challenged words. We think (as apparently did the judge) that the jury would be thinking about a contest of credibility, without animadversion on any question of the defendants' appearance as witnesses. The court said in *Commonwealth* v. *Hartman*, 404 Mass. 306, 317 (1989), "unless a prosecutor's comments are of such a nature that a jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify, they are not prejudicially unfair." See *Commonwealth* v. *King*, 33 Mass. App. Ct. 905, 907 (1992) (prosecutor's comments that certain facts were "not in dispute" were response to defendant's closing argument, not comment on failure to testify). We add that the judge charged the jury fully on the defendants' right to silence.[8]

3. *Lesser included offense.* The defendant Lashway requested an instruction on what he suggested was a "lesser included" offense, namely, the misdemeanor of larceny under

[7]The defendant Millette also complained of the judge's instructions on joint venture. The charge was compendious and adequate.

[8]The defense objected to the prosecutor's reference to Johnson as the "victim." This hardly qualified as an undue appeal to the sympathies of an ordinarily sober-sided jury; and the judge encouraged the jury to hew to the facts without bias. Compare *Commonwealth* v. *Brown*, 414 Mass. 123, 125-126 (1993).

$250, G. L. c. 266, § 30(1).[9] The request was properly refused; this statute, requiring only an intentional taking, was inapposite to the condition of the case. If a jury could (quite implausibly) find there was no taking, then the crime charged in the indictment, unarmed robbery, itself would crash. But if a taking could be found, then, as indicated in our first point above, the taking was indubitably from the person; indeed, the defense had offered no other theory at trial. "[T]here can be no basis for a lesser included offense instruction unless an element which distinguishes the greater from the lesser crime . . . is sufficiently in dispute at the trial so that a jury may rationally find the defendant not guilty of the greater and guilty of the lesser offense." *Commonwealth* v. *Thayer*, 35 Mass. App. Ct. 599, 602 (1993), *S.C.*, 418 Mass. 130 (1994). We may note, by way of contrast, that the crime of larceny from the person, G. L. c. 266, § 25(*b*) (set out at note 6, *supra*), might have been charged as a lesser offense: that statute would apply if the jury found against the Commonwealth on the question of "causation" — whether the taking was by means of force or fear, a disputed issue. But counsel declined an instruction on larceny from the person, presumably because the expected sentence on that crime would not differ, or differ much, from the likely sentence for unarmed robbery, while tendering the alternative crime to the jury might increase the chance of a conviction.

The judgment as to the defendant Lashway is affirmed. The judgment as to the defendant Millette is reversed, the verdict is set aside, and a judgment is to enter for this defendant.

*So ordered.*

---

[9]General Laws c. 266, § 30(1), as amended through St. 1987, c. 468, § 1: "Whoever steals . . . the property of another . . . shall be guilty of larceny, and . . . if the value of the property stolen . . . does not exceed two hundred and fifty dollars, shall be punished by imprisonment in jail for not more than one year or by a fine of not more than three hundred dollars."