COMMONWEALTH vs. FREDERICKA GOLDSTEIN
(and a companion case[1]).

No. 00-P-1587.

Norfolk. December 11, 2001. - May 28, 2002.

Present: BROWN, LENK, & COWIN, JJ.

*Grand Jury. Practice, Criminal,* Grand jury proceedings. *Evidence,* Grand jury
proceedings. *Probable Cause. Larceny. Robbery.*

On pretrial motions to dismiss indictments relating to the charge of armed
robbery, the motion judge should not have dismissed the indictments,
where there was sufficient evidence before the grand jury to establish prob-
able cause that the two defendants had committed the armed robbery, one
as the principal and the other as a joint venturer. [866-870]

INDICTMENTS found and returned in the Superior Court Depart-
ment on November 23, 1999.

Pretrial motions to dismiss and for reconsideration were heard
by *R. Malcolm Graham, J.*

*Robert C. Cosgrove,* Assistant District Attorney, for the
Commonwealth.

*Paul P. Hayes, Jr.,* for Michael K. White.

*Ronald W. Rice* for Fredericka Goldstein.

BROWN, J. The defendants, Fredericka Goldstein and Michael
K. White (mother and son), were each indicted for armed
robbery. In addition, Goldstein was indicted for larceny over
$250, and separately for being an accessory after the fact to
armed robbery, and accessory after the fact to assault by means
of a dangerous weapon. White was also indicted for larceny
over $250, and assault by means of a dangerous weapon.

The defendants brought pretrial motions, pursuant to *Com-
monwealth v. McCarthy,* 385 Mass. 160, 163 (1982), to dismiss

---

[1]Commonwealth *vs.* Michael K. White.

the indictments relating to the charge of armed robbery.[2] After hearing argument, a judge in the Superior Court allowed the motions to dismiss, and filed a memorandum containing his order. The Commonwealth filed notice of appeal, and a motion for reconsideration. This motion was denied, and a memorandum of decision issued. The Commonwealth appeals from the order of dismissal, and from the denial of the motion for reconsideration, contending that there was sufficient evidence before the grand jury to support an indictment for armed robbery. We reverse the orders of the motion judge, and remand to the Superior Court for trial.

We set forth the pertinent evidence presented to the grand jury: Robert Walker, a loss prevention officer employed at a Wal-Mart store in Walpole, testified that on September 21, 1999, at about noon, he noticed a woman in the store wearing "blue hospital scrubs." Walker had previously seen the woman (later identified as defendant Goldstein) dressed in scrubs at another Wal-Mart store. The woman, accompanied by a man (later identified as defendant White), had taken three DVD players down off the shelf and placed them in a shopping cart along with some DVD movies and a portable telephone. These items, it was later determined, had a value of $1679.69.

Walker testified that the defendants then left the electronics

[2]Goldstein's motion to dismiss was addressed to three listed indictments, #108174 (armed robbery), #108176 (accessory after the fact to armed robbery), and #108177, which is not included in the Commonwealth's record appendix (Goldstein has not filed a record appendix in this court). Parenthetically, we note that the text of Goldstein's motion refers to "two counts" of being an accessory. However, it appears that Goldstein was charged in two separate *indictments* for being an accessory, and we presume that indictment #108177 charged her with being an accessory to assault with a dangerous weapon. Indictment #108176 does not contain reference to the crime of accessory after the fact to assault by means of a dangerous weapon.

In his memorandum denying the Commonwealth's motion for reconsideration, the judge concluded that "[t]he evidence before the grand jury established no more than larceny and an assault by means of a dangerous weapon." While the judge did not expressly mention the accessory indictments in either of his memoranda, it is quite apparent that when he indicated that he was dismissing the armed robbery indictments, he was including the indictment charging Goldstein with being an accessory after the fact to that crime, and not the other accessory offense, despite the fact that the headnotes in his two memoranda list indictment #108177. We treat the latter indictment as not being before the court.

department, and that Goldstein retrieved a "bunch of our blue bags" from behind a registry area that was empty at the time. Subsequently, in the housewares department, an assistant manager of the store, who was pretending to be a shopper, observed the defendants begin to place the merchandise into the bags Goldstein had obtained.

The defendants then proceeded to walk through a registry area without paying for the merchandise and went out the front door, setting off a security alarm.[3] Walker waited until the defendants had left the building, and then he went outside and approached White from the front. White had been pushing the shopping cart (Goldstein was standing next to him) as the defendants left the store. Walker grabbed the cart and identified himself as a security officer. At this point, Goldstein, who was not carrying anything, walked past Walker to her automobile, a Mitsubishi Galant. White struggled to separate the cart from Walker, who continued to hold onto it. After a few seconds, however, White let go of the cart. As Walker reached for White's arm, White managed to retrieve a knife from his rear pocket, and he flicked it open and made a left to right "sweeping motion" toward Walker with the blade. Walker then jumped back and let White proceed to the Mitsubishi. Goldstein was driving, and the vehicle sped off, but Walker was able to obtain the license plate number. The merchandise in the shopping cart that the defendants left behind was tagged, wrapped up, and placed into an evidence locker.

James O'Connell, a Walpole police officer, testified that he responded to the Wal-Mart store upon receiving a report of an armed robbery, and that when he arrived Walker described to him what had occurred. He stated that the Norwood police subsequently recovered the Mitsubishi. Two black folding knives were found underneath the floor mat on the passenger side of the vehicle. In the trunk were four video recorders and a cordless phone that Walker identified as belonging to Wal-Mart (but which were not the same items that were the subject of the instant prosecution).

In his memorandum allowing the defendant's motion to

---

[3]Walker explained that tags on the items, if not deactivated, will set off the alarm.

dismiss, the judge, after review of the facts, concluded that "it is clear from the facts that the defendant did not continue to carry away the items when Walker tried to initially stop him," and that the act of "walking away from the property in this case is sufficient for th[e] court to find that the robbery was abandoned because the act of leaving the property is an appreciable act to allow the court to determine that the defendants had withdrawn from that criminal enterprise."

In his subsequent memorandum denying the Commonwealth's motion for reconsideration the judge refocused, observing that the defendants were not still in the store when White threatened Walker, and, furthermore, that "the theft arguably ended when White released his hold on the cart, left the goods, and began walking away from the store." Thus, the memorandum recites, "the brandishing of the knife by White which caused fear in Walker did not facilitate the theft of property and was a separate occurrence from the larceny." The judge concluded that the grand jury did not hear sufficient evidence to establish probable cause that White committed an armed robbery or that Goldstein had engaged in a joint venture with him.

While the judge's analysis is imbued with a certain surface appeal, it cannot be divorced from the context in which it is undertaken. In the normal course, the court will not scrutinize the competency or sufficiency of evidence presented to the grand jury. *Commonwealth* v. *Coonan,* 428 Mass. 823, 825 (1999). This is a rule of long-standing. See *Commonwealth* v. *O'Dell,* 392 Mass. 445, 450-451 (1984). "At the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him." *Commonwealth* v. *McCarthy,* 385 Mass. 160, 163 (1982). See *Commonwealth* v. *McGravy,* 430 Mass. 758, 762 (2000). The standard of sufficiency has been defined as whether the grand jury "heard reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." *McCarthy, supra.* This standard "offers no sure mechanical guide for assessing sufficiency, but it has been employed primarily to strike down indictments in cases where a grand jury has heard . . . *no* evidence whatever that would support an inference of the

defendant's involvement." *Commonwealth* v. *Truong Vo Tam*, 49 Mass. App. Ct. 31, 37 (2000), quoting from *Commonwealth* v. *Club Caravan, Inc.*, 30 Mass. App. Ct. 561, 567 (1991) (emphasis supplied). A grand jury finding of probable cause is necessary if the indictments "are to fulfill their traditional function as an effective protection 'against unfounded criminal prosecutions.' " *Commonwealth* v. *McCarthy, supra*, quoting from *Lataille* v. *District Ct. of E. Hampden*, 366 Mass. 525, 531 (1974). But probable cause requires considerably less evidence than that which is required to support a finding of guilty. See *Commonwealth* v. *O'Dell*, 392 Mass. at 451; *Commonwealth* v. *Badgett*, 38 Mass. App. Ct. 624, 625 (1995). We turn to the analysis.

Larceny is the unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently. *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). Robbery includes all of the elements of larceny and in addition requires that force and violence be used against the victim or that the victim be put in fear. *Ibid. Commonwealth* v. *Novicki*, 324 Mass. 461, 464-465 (1949).

It is said that there must be a "causal connection between the defendant's use of violence or intimidation and the acquisition of the victim's property." *Commonwealth* v. *Jones*, 362 Mass. 83, 87 (1972). White's argument is, in essence, that there is no evidence that the merchandise was obtained after he caused or employed force and violence to put Walker in fear (by the brandishing of the knife). White points to the fact that the knife was produced only after he had relinquished control of the shopping cart and Walker reached for his arm attempting to detain him. He concedes that the Commonwealth's proof may have established a larceny.[4] The issue is whether the larceny was converted into a robbery.

A larceny may be converted into a robbery where, as here, a person who has protective concern for the goods taken interferes with the completion of the robbery. See *Commonwealth* v. *Ra-*

---

[4]Goldstein also appears to concede the point. See *Commonwealth* v. *Sullivan*, 40 Mass. App. Ct. 284, 285 (1996) (defendants arrested by department store employees after leaving the store without paying for the items).

*jotte*, 23 Mass. App. Ct. 93, 94 (1986). The problem with the motion judge's analysis is that it depends upon a precise sequencing of events that is best reserved for a petit jury to sort out under proper instructions from the trial judge. In the last analysis, the grand jury is not the appropriate forum for reconciling subtle gradations of offenses, such as we have here. It must be recognized that "[t]he grand jury is an investigatory and accusatory body only. It cannot and does not determine guilt." *Brunson* v. *Commonwealth*, 369 Mass. 106, 120 (1995).

We stated in *Commonwealth* v. *Lashway*, 36 Mass. App. Ct. 677, 680 (1994), that "the effect of the decided cases is that the nexus between the force or fear and the taking may be relatively loose and yet encompass a robbery." The *Lashway* opinion, at 681, invites attention to the Model Penal Code, which in its definition of robbery speaks of force or threat of force occurring "in the course of committing a theft," including even the period of flight after the commission. Model Penal Code § 222.1 & comment 2 (Official Draft 1980). A significant number of our appellate decisions reflect this principle. See *Commonwealth* v. *Jones*, 362 Mass. at 89-90 (for robbery, sufficient to show that the defendant's use of force or the victim's being put in fear occurred at "approximately the same time"); *Commonwealth* v. *Sheppard*, 404 Mass. 774, 778 (1989) (even if jury believed that the defendant's assault took place immediately after the robbery, the jury were free to draw the reasonable inference that the defendant used the force to "facilitate the larceny"); *Commonwealth* v. *Mavredakis*, 430 Mass. 848, 854-855 (2000) (victim returned while theft was in progress); *Commonwealth* v. *Assad*, 19 Mass. App. Ct. 1007, 1008-1009 (1985) (rejecting argument that attempted robbery was not shown because the force was used only to facilitate escape; sufficient that force was connected to the objective of stealing property); *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619, 624 (1986) (indicating that a fact finder may look at such an episode as a "continuum and reject as a manufactured abstraction" the idea that the assault occurred after the taking was completed); *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. at 94-95 (force employed after taking; a fact finder may look at such an episode as a "continuum"); *Commonwealth* v. *Grassa*, 42 Mass. App.

Ct. 204, 207 (1997) (evidence for armed robbery sufficient where defendant brandished a screwdriver at a police officer, causing the officer to step back and allow the defendant to complete the theft of a vehicle); *Commonwealth* v. *Glanden*, 49 Mass. App. Ct. 250, 252 (2000) (element of force and violence, even if not intended at the start of the theft, still unaccomplished, was pursued over the victim's personal resistance).

The thrust of the judge's analysis is that the defendant White abandoned his efforts to retain the stolen merchandise the moment he relinquished his hold on the shopping cart. It was only after the security officer reached out to grab hold of his arm that the defendant removed the knife from his pocket. Since the larceny at that point had been abandoned, under this reasoning, the use of the knife could not have converted the larceny into a robbery. However, we believe that the cases cited in the text, while not addressing evidence presented to a grand jury, suggest that ultimate criminal liability for armed robbery, depending on a sequence of events that transpired in the course of a second or two, is not properly within this court's purview in reviewing the dismissal of grand jury indictments. In the *Assad* case, *supra* at 1008-1009, the defendant's argument was that the purpose of the assault was to facilitate an escape, not to steal, pointing out that there was no evidence that anything was taken.[5] The court concluded, on a motion for a required finding of not guilty, that the evidence supported an inference that the assault was connected to the objective of stealing property. In a passage bearing significance to the present facts, the court indicated that it was not wholly implausible that the interruption of the defendant and his accomplice caused them to abandon the felonious enterprise and to concentrate on escape. *Ibid.*

It would be open to a trial jury on the instant facts to make a similar finding that White's use of the knife was intended to facilitate his escape (and that of Goldstein) rather than to ensure that the merchandise remained in the defendants' possession.

---

[5]The court noted that Assad was not charged with a completed robbery, only assault with intent to rob. Nevertheless, the court in *Rajotte*, 23 Mass. App. Ct. at 95, did not find a meaningful distinction between armed robbery and assault with intent to rob with respect to the question whether the larceny was converted to a robbery.

Indeed, on remand, the Commonwealth may elect not to try the defendants on the armed robbery indictments. It is apparent, however, that the present case is not one in which there was "no evidence" that the defendants committed armed robbery. Although the question is reasonably close, we conclude that this is not the rare case where the court should scrutinize the evidence presented to the grand jury. There was probable cause to arrest the defendants for that offense.[6] *Commonwealth* v. *McCarthy, supra.*

The order of the motion judge dismissing the two armed robbery indictments, and the indictment charging Goldstein with being an accessory after the fact to armed robbery is reversed, as is the order denying the Commonwealth's motion for reconsideration of the motion to dismiss. The matters are remanded to the Superior Court for trial.

*So ordered.*

---

[6]We note that the crime of robbery is based in part on the potential for injury that arises from the possession of a dangerous weapon. "That potential for injury does not depend on the precise moment at which the defendant becomes armed, as long as he becomes armed at a point directly related to the commission and completion of the robbery." *Commonwealth* v. *Boiselle,* 16 Mass. App. Ct. 393, 400 (1983).