## COMMONWEALTH *vs.* ANTONIO CRUZADO, JR.

No. 07-P-1398.

Middlesex. October 2, 2008. - March 9, 2009.

Present: DUFFLY, BROWN, & WOLOHOJIAN, JJ.

*Robbery. Assault and Battery by Means of a Dangerous Weapon. Habitual Offender.*

Evidence at a criminal trial, which established that the defendant used force to take a motor vehicle from an individual who had a protective interest in it, was sufficient to support the defendant's conviction of unarmed robbery. [805-806]

Evidence at a criminal trial was sufficient to convict the defendant of assault and battery by means of a dangerous weapon (a motor vehicle), both under the intentional theory of battery and under a wanton and reckless theory of battery. [806-808]

A criminal defendant's sentence of life in prison on a charge of unarmed robbery, imposed as a habitual criminal under G. L. c. 279, § 25, did not constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution or art. 26 of Massachusetts Declaration of Rights. [808]

INDICTMENTS found and returned in the Superior Court Department on November 15, 2005.

The cases were tried before *Dennis J. Curran*, J.

*Richard B. Klibaner* for the defendant.

*Stephen C. Hoctor*, Assistant District Attorney, for the Commonwealth.

DUFFLY, J. This is the defendant's direct appeal from his convictions of unarmed robbery and assault and battery by means of a dangerous weapon and from his sentence of life in prison on the charge of unarmed robbery, imposed as a habitual criminal under G. L. c. 279, § 25. He argues that the Commonwealth failed to prove all essential elements of the unarmed robbery and the assault and battery by means of a dangerous weapon charges and that the convictions thus violated his right to due process. He also claims that the life sentence imposed under the habitual

criminal statute relative to his unarmed robbery conviction constitutes cruel and unusual punishment. We affirm.

*Facts.* We summarize the facts the jury could have found. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 678-679 (1979). Christopher Adams, an employee of Jack's Gas, a gasoline station in Cambridge, was not on duty at the time of the events in question, but was at the station working on his own vehicle. Tommy Tompkins, also an employee, had parked his white Honda Civic automobile in front of the station on Massachusetts Avenue. A sign indicating that Jack's Gas performed State vehicle inspections was leaning against the rear of Tompkins's Honda. Adams was eating lunch inside the station with other employees when he heard a loud slapping noise that turned out to be the sign falling over. As Adams and others ran out of the station they saw that Tompkins's Honda had been taken and that it was two blocks away. Adams and another employee jumped in a truck and gave chase.

The driver of the Honda, the defendant, stopped at a traffic light, and Adams jumped out of the truck, ran up to the Honda, and "ripped" the door open. The defendant stepped on the accelerator pedal and drove through the red light. After proceeding through the intersection, the Honda was traveling thirty to forty miles per hour. Adams's foot was stuck next to the seat, and he held onto the Honda by putting one hand on the inside of the roof of the Honda and holding onto the door with the other.

While driving, the defendant kept trying to grab Adams's hands to push him off the Honda. As the defendant proceeded through the intersection, another vehicle pulled in front of the Honda, and the defendant swerved out into oncoming traffic, crossing the solid double yellow line in the road. When the Honda swerved, the door swung completely open and then swung back. Adams's foot became dislodged, and he could only hold onto the door. The defendant traveled three to four blocks with Adams continuing to hold onto the Honda. Seeing a gap between vehicles in the oncoming traffic lane, Adams jumped from the Honda to the side of the road, slid across the pavement, hit the front left tire of a parked vehicle, and spun around.[1] Police were called and gave

---

[1] Adams suffered "road rash" to his ankles, hands, palms, and left leg; the skin on the palms of his hands was peeled back and his left leg was bleeding.

chase. The defendant was apprehended after he drove in the wrong direction around a rotary, struck an automobile, and crashed into a guardrail.

*Discussion.* 1. *Unarmed robbery.* The unarmed robbery statute draws substantially from the common law of robbery and requires a showing of a larceny from a person by force and violence or by assault and putting in fear. *Commonwealth* v. *Jones*, 362 Mass. 83, 86 (1972). G. L. c. 265, § 19(*b*). Robbery is distinguished from larceny by its requirement of actual or constructive force. *Jones, supra.*

The defendant claims that the Honda was not taken from Adams's person or from an area within his control, and thus no robbery was established. In essence he alleges that he was not in the "presence" of Adams until "well after the theft was complete" when Adams "ripped" open the door to the Honda after pursuit.

"While the statute . . . speaks of a taking from the victim's 'person,' the offense is understood 'to include the common law conception of taking in a victim's 'presence' . . . and . . . cover[s] cases where the victim could have prevented the taking had he not been intimidated.' " *Commonwealth* v. *Lashway*, 36 Mass. App. Ct. 677, 679-680 (1994), quoting from *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. 93, 95-96 (1986). A larceny may be converted to a robbery where the assault is committed on a victim who has a protective concern for the goods and where the victim interferes with the completion of the theft. See *Commonwealth* v. *Mavredakis*, 430 Mass. 848, 854-855 (2000). Here, a rational jury could have found that the Honda was taken from Adams's person as the robbery was not complete when the defendant was still fleeing the scene while being pursued by Adams. The defendant accelerated the car and pushed at Adams's hands to attempt to remove the car from Adams's grasp and to complete the theft.

We also reject the defendant's argument that the element of force was not proved beyond a reasonable doubt. "Robbery includes all of the elements of larceny and in addition requires that force and violence be used against the victim or that the victim be put in fear." *Commonwealth* v. *Goldstein*, 54 Mass. App. Ct. 863, 867 (2002). In *Goldstein,* the defendant argued that

because a knife was brandished after control of the shopping cart holding the stolen merchandise had been relinquished, only larceny could be established. As we said there, "[a] larceny may be converted into a robbery where . . . a person who has protective concern for the goods taken interferes with the completion of the robbery." *Ibid.* See *Commonwealth* v. *Rajotte, supra* at 94. "[T]he nexus between the force or fear and the taking may be relatively loose and yet encompass a robbery." *Commonwealth* v. *Goldstein, supra* at 868, quoting from *Commonwealth* v. *Lashway, supra* at 680. See Model Penal Code § 222.1 & comment 2 (1980) (robbery includes force or threat of force occurring "in the course of committing a theft," as well as period of flight after commission).

The jury here could have found that Adams's chase of the defendant and his attempt to recover the Honda by jumping onto it occurred in the course of the theft. Accordingly, the defendant's use of force — by accelerating the Honda with Adams still holding on and by attempting to dislodge Adams's hands from the Honda — was employed to perpetrate that theft.

We also reject the defendant's argument that the Commonwealth failed to show that Adams had a "protective interest" in the Honda. "The essence of robbery is the exertion of force, actual or constructive, against another in order to take personal property of any value whatsoever, with the intention of stealing it, from the protection which the person of that other affords. . . . It is not affected by the state of the legal title to the goods taken." *Commonwealth* v. *Levia*, 385 Mass. 345, 348 (1982), quoting from *Commonwealth* v. *Weiner*, 255 Mass. 506, 509 (1926). Adams had an adequate protective concern for Tompkins's car, which was stolen from outside their place of employment. See *Commonwealth* v. *Grassa*, 42 Mass. App. Ct. 204, 207-208 (1997), and cases cited.

2. *Assault and battery by means of a dangerous weapon.* As provided by G. L. c. 265, § 15A(*b*), as appearing in St. 2002, c. 35, § 2:

> "Whoever commits assault and battery upon another by means of a dangerous weapon shall be punished by imprisonment in the state prison for not more than ten years or in a house of correction for not more than 2 ½ years,

or by a fine of not more than $5,000, or both such fine and imprisonment."

A weapon can be dangerous per se — "an instrumentality designed and constructed to produce death or great bodily harm" — or dangerous as used, where the object is capable of inflicting serious bodily injury or causing death. *Commonwealth* v. *Appleby*, 380 Mass. 296, 303-304 (1980). See *People* v. *Buford*, 69 Mich. App. 27, 30 (1976) (automobile may be dangerous weapon as used). It is a question for the fact finder whether an instrument is used as a dangerous weapon. *Commonwealth* v. *Appleby*, *supra* at 304.

The defendant argues that his conviction of assault and battery by means of a dangerous weapon, the Honda, must be reversed as the Commonwealth did not prove all elements of the offense beyond a reasonable doubt. "[T]he offense of assault and battery by means of a dangerous weapon under G. L. c. 265, § 15A, requires that the elements of assault be present, that there be a touching, however slight, that that touching be by means of the weapon, and that the battery be accomplished by use of an inherently dangerous weapon, or by use of some other object as a weapon, with the intent to use that object in a dangerous or potentially dangerous fashion." *Id.* at 308 (citations omitted). The second theory of assault and battery is that it is "the intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another." *Commonwealth* v. *Burno*, 396 Mass. 622, 625 (1986). The jury were instructed on both theories.

The defendant contends the battery was not accomplished because it was Adams who brought himself into contact with the Honda. The evidence was sufficient to sustain the conviction of assault and battery by means of a dangerous weapon under either theory.

Supporting conviction under the intentional theory of battery, the jury could have found that the defendant intended to use both the Honda and his hands in a dangerous or potentially dangerous fashion. While driving he intentionally accelerated the Honda as Adams was holding onto it, drove the Honda through a red light, swerved in traffic, and traveled several

blocks at a speed of thirty to forty miles per hour. At the same time, the defendant used his hands to attempt to dislodge Adams from the Honda.

Alternatively, the defendant's conviction can be upheld under a wanton and reckless theory of battery. The jury could have found that the defendant's decision to accelerate with a person holding onto the door and frame of the Honda was heedless of the potential danger to Adams. Not only was the defendant driving the Honda in a dangerous fashion, but he was also attempting to push Adams from the Honda with his hands. The reckless conduct resulted in Adams jumping from the moving Honda and suffering injuries.[2]

3. *Sentencing as a habitual criminal.* A jury found the defendant guilty under the habitual criminal statute, which requires that he be "punished by imprisonment in the state prison for the maximum term provided by law as a penalty for the felony for which he is then to be sentenced." G. L. c. 279, § 25. For unarmed robbery the maximum term is life in prison. G. L. c. 265, § 19(*b*). The defendant's arguments that this sentence constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights were rejected in *Commonwealth* v. *Tuitt*, 393 Mass. 801, 813 (1985).

*Judgments affirmed.*

---

[2]Because we decide as we do, we reject the defendant's claim that the asserted failure of the Commonwealth to prove all elements of unarmed robbery and assault and battery with a dangerous weapon beyond a reasonable doubt deprived him of his due process rights. See *In re Winship*, 397 U.S. 358, 362 (1970) (due process requires proof of criminal charge beyond reasonable doubt); *Commonwealth* v. *Nolin*, 448 Mass. 207, 217 (2007).