COMMONWEALTH vs. RONALD P. MARCOTTE.

Bristol.   April 13, 1984. — July 19, 1984.

Present: ARMSTRONG, ROSE, & WARNER, JJ.

Robbery. Larceny. Practice, Criminal, Instructions to jury. Evidence,
    Hearsay.

Although a defendant convicted of armed robbery of a gasoline station had
    not objected to the judge's instructions to the jury and did not argue on
    appeal that the charge was deficient, this court concluded that the interests
    of justice required a new trial because the judge in his charge focused
    on the fear of the station attendant to the exclusion of the defendant's
    intent to put the attendant in fear. [394-395]
At the trial of an indictment charging armed robbery of a gasoline station,
    in which the defendant claimed that he was guilty only of larceny because
    he was participating in a staged holdup pursuant to an agreement among
    the defendant, the gasoline station supervisor, and the attendant to steal
    receipts belonging to an oil company, it was error to exclude as hearsay
    evidence of conversations between the defendant and the station super-
    visor relating to the details of the asserted larceny scheme. [396]

INDICTMENT found and returned in the Superior Court De-
partment on March 18, 1981.

The case was tried before Wagner, J.

Patricia A. O'Neil for the defendant.

Phillip L. Weiner, Assistant District Attorney, for the Com-
monwealth.

ROSE, J. The defendant appeals from his conviction of armed
robbery, raising issues with respect to sentencing, exclusion
of evidence, and alleged prosecutorial misconduct. Although
we have considered the issues raised by the defendant and find
no reversible error, we conclude that there is a substantial risk
that an error in the trial judge's final charge misled the jury
and materially influenced the verdict. "Accordingly, we reverse
because this is one of the exceptional occasions where 'we

think that the interests of justice entitle the defendant to a new trial,' although the ground for reversal was not raised either in the trial court or on appeal." *Commonwealth* v. *Brattman,* 10 Mass. App. Ct. 579, 580 (1980). *Commonwealth* v. *Dunphy,* 377 Mass. 453, 454 (1979). We confine our discussion to the ground for reversal and one issue raised by the defendant which is likely to arise on retrial.

The defendant was indicted for armed robbery of a clerk at a self-service gasoline station (G. L. c. 265, § 17) and for unlawful carrying of a firearm (G. L. c. 269, § 10[b]), both crimes alleged to have occurred on July 7, 1980. At trial, the defendant testified in his own defense. He admitted so much of the armed robbery indictment as charged larceny, but asserted that he lacked the requisite intent for robbery, since he believed that he was acting pursuant to a plan in which he, the station supervisor, and the clerk on duty at the time of the alleged robbery were participating. The asserted plan was to steal receipts belonging to the oil company by "staging" a robbery. The defendant had never spoken with the clerk about the plan but believed that the station supervisor had informed her of it and that she was willing to cooperate. The defendant denied having a gun during the alleged robbery. He asserted that the clerk and the station supervisor turned him in because he absconded with the fruits of the alleged robbery instead of dividing them according to the plan.

The clerk was the Commonwealth's principal witness. She testified that on the morning of the alleged crimes the defendant appeared at the door to the attendant's booth at the gasoline station and robbed her at gunpoint. The clerk said that she had never seen the defendant previously. She denied any knowledge of a plan to commit larceny by staging a robbery. The station supervisor was never produced.

Certain details of the alleged crimes, for which the defendant and the clerk offered differing explanations, could have been consistent with either a robbery or a planned larceny. The clerk had left the door to the attendant's booth ajar before the defendant's arrival; the clerk did not activate an available alarm during the alleged robbery; the defendant made no attempt to conceal

his identity, notwithstanding his having frequented the station in the past; the defendant left the scene in an easily recognizable automobile in a conspicuous manner; the clerk did not alert customers to the alleged robbery after the defendant left; the clerk telephoned the station supervisor at another station before she telephoned the police; and the clerk gave the defendant's name to the police. There was also evidence that the defendant and the station supervisor socialized often, and that they had previously been involved in criminal activity together.

The trial judge instructed the jury on the assumption that the critical consideration in determining whether the defendant was guilty of robbery or only of simple larceny was the clerk's fear.[1] The judge told the jury, in essence, that if they should

---

[1] The relevant portion of the charge is as follows:

"Robbery is the taking and carrying away of personal property against the will by force or violence or by the assault and putting in fear with intent to steal.
"  . . . .
"Now, Mr. Marcotte contends that in this particular case, he joined together with another individual in deciding to take from the Shell Oil Company a sum of money; and he contends through his testimony that it was his understanding that the clerk was aware of the scheme or the plan.
"Now, if you're satisfied that the clerk was aware of the scheme and the plan — therefore, by being so informed, she couldn't have been put in fear — if you became satisfied that the young lady who testified was part of the scheme, was aware that Mr. Marcotte was going to arrive at the station and request some money that she had deposited that was the property of the Shell Oil Company, and that she was part of a scheme with Mr. Marcotte and [the station supervisor] and herself, then naturally, the element of her being put in fear would not apply. The Commonwealth would have failed to prove that beyond a reasonable doubt.
"But if you're satisfied beyond a reasonable doubt on the evidence that you've heard that Mr. Marcotte and [the station supervisor] together, without the young lady, the clerk, decided they were going to take the money from the Shell Oil Company and decided that it was a good idea that Mr. Marcotte go to the station, and if you're satisfied beyond a reasonable doubt that he went there without any prior knowledge of the young lady — in other words, the fact that she may or may not have anticipated that she might be robbed is of no

believe that the clerk was in fear, they could find the defendant guilty of robbery, but that if they believed she was not in fear (because she was willingly cooperating in a plan to commit larceny by staging a robbery), they could find the defendant guilty of larceny. He made no mention of the defendant's intent to put the clerk in fear. The jury found the defendant guilty of armed robbery but not guilty of unlawfully carrying a firearm.

"Under our statutes, as at the common law, robbery may be encompassed in either of two ways: by force applied to the person, with intent to steal, or by an assault putting the person in fear, with the same intent." *Commonwealth* v. *Richards,* 363 Mass. 299, 302 (1973). Here, the Commonwealth relied on the latter theory. To establish a robbery through assault by putting in fear, there must be, in addition to the elements of simple larceny, some objectively menacing conduct by the defendant, *Commonwealth* v. *White,* 110 Mass. 407, 409 (1872), undertaken with the intent to put the victim in fear for the purpose of stealing his property, *Commonwealth* v. *McCarthy,* 360 Mass. 566, 568 (1971), and resulting in reasonable fear or apprehension on the part of the victim facilitating the theft, *Commonwealth* v. *Richards,* 363 Mass. 299, 304 (1973). See Model Penal Code § 222.1(1)(b) and comment 4(c) (Official Draft 1980). Cf. *Commonwealth* v. *Tarrant,* 367 Mass. 411, 416-417 (1975); LaFave & Scott, Criminal Law § 82, at 611 (1972). Thus, the defendant's assertion that he thought the clerk was a willing participant and would not be put in fear was, if true, a valid defense to the charge of robbery. See *Commonwealth* v. *McCarthy, supra.*

---

consequence provided that you're satisfied beyond a reasonable doubt that she was not aware that this was a particular plan or scheme. . . .

"She would have to be part of the plan, in other words. She acquiesced, agreed to join in the plan. If she did, then the crime that would have been committed would have been a larceny because she wouldn't have been put in fear. She wouldn't have surrendered the property that was in her possession and control — the money — by way of fear because she would have surrendered the money belonging to the Shell Oil Company by way of a plan or a joint enterprise that she was part of. Therefore, Mr. Marcotte would be guilty of the crime of larceny . . . ."

In the context of the evidence presented, the trial judge's focus on the clerk's fear to the exclusion of the defendant's intent to put the clerk in fear was clear error.[2] Under the judge's instructions, the jury had two choices: believe the clerk's testimony as to her lack of complicity in the asserted larceny scheme and find the defendant guilty of robbery; or disbelieve the clerk's testimony, find her to be in complicity (on the basis of the defendant's testimony and circumstantial evidence), and find the defendant guilty of larceny. Under proper instructions, the jury would have had a third option: believe both the clerk's and the defendant's versions of the events (i.e., that the defendant did believe that he was "staging" a robbery to commit a larceny, with the clerk's knowledge and acquiescence, but that the clerk really did not know anything about such a scheme) and find the defendant guilty of larceny.

There is a substantial danger that the erroneous limitation imposed by the judge's instructions on the jury's alternatives in viewing the evidence and returning a verdict misled the jury and materially influenced the verdict. Cf. *Commonwealth* v. *Brattman, supra; Commonwealth* v. *Brown,* 10 Mass. App. Ct. 935 (1980); *Commonwealth* v. *Morales,* 14 Mass. App. Ct. 1035 (1982). Although the evidence viewed in the light most favorable to the Commonwealth would have supported a verdict for armed robbery, the evidence would also have supported a verdict for larceny. Under the erroneous instructions, the jury could have convicted the defendant of the serious offense of armed robbery without believing that he possessed the requisite intent for that crime. There is a substantial risk that a miscarriage of justice has occurred. Accordingly, the defendant is entitled to a new trial.

---

[2] We note that this is an unusual case. In the more usual situation, where there is evidence that the defendant intended to steal property from the victim, that he engaged in some objectively menacing conduct toward the victim, and that such conduct facilitated a theft from the victim, the inferences that the defendant intended to put the victim in fear and that, in fact, the victim was put in fear are virtually inescapable. See *Commonwealth* v. *McCarthy,* 360 Mass. at 568; *Commonwealth* v. *Richards,* 363 Mass. at 304-305. Cf. *Commonwealth* v. *Randall,* 4 Gray 36, 38-39 (1855) ("The unreasonable and excessive use of force on the person of another being proved, the wrongful intent is a necessary and legitimate conclusion in all cases where the act [assault and battery] was designedly committed").

Because it is likely to arise on retrial, we briefly address the defendant's contention with respect to the exclusion as hearsay of certain testimony offered by the defendant. At trial, defense counsel attempted to elicit from the defendant testimony of the content of conversations between the defendant and the gasoline station supervisor relating to the details of the asserted larceny scheme. On objection by the prosecutor, the testimony was excluded as hearsay. The exclusion was clear error. The testimony was relevant on the defendant's intent, as it tended to establish the defendant's understanding of the asserted larceny scheme and the clerk's involvement therein. The testimony was not hearsay as it was offered as proof of the defendant's state of mind, not for the truth of the matters asserted. See *Commonwealth* v. *Fiore,* 364 Mass. 819, 824 (1974); Liacos, Massachusetts Evidence 262-263 (5th ed. 1981). In the circumstances, however, we would have treated the error as harmless because the prosecutor, on cross-examination, elicited from the defendant extensive testimony with respect to the defendant's understanding of the asserted larceny scheme.

*Judgment reversed.*

*Verdict set aside.*