COMMONWEALTH *vs.* MICHAEL GRASSA.

No. 96-P-1090.

Middlesex. December 12, 1996. - February 6, 1997.

Present: BROWN, KAPLAN, & GILLERMAN, JJ.

*Robbery. Practice, Criminal,* Required finding.

Evidence at the trial of an indictment for armed robbery was sufficient to
   establish beyond a reasonable doubt that the victim was placed in fear
   by the defendant, which facilitated the theft of a motor vehicle from the
   person of the victim. [206-208]

INDICTMENT found and returned in the Superior Court
Department on June 16, 1994.

A motion to dismiss was heard by *R. Malcolm Graham,* J.,
and the case was tried before *David M. Roseman,* J.

*Richard J. Fallon* for the defendant.

*Melissa J. Weisgold,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. The undisputed material facts are as follows.
About 4:00 P.M., May 7, 1994, John Thomas and Winston
Harper, plainclothed security guards at the Stop & Shop su-
permarket in Malden, leaving the store to attend to a case of
shoplifting, heard a car alarm go off in a Chevrolet van in the
adjacent parking lot. With the alarm still sounding, the defen-
dant (later positively identified) and another man quit the van
and walked away. The steering wheel had been torn apart.
While Harper remained in the parking area watching the
suspects in their course, Thomas went indoors to inform Paul
Howard, the uniformed Malden police officer on detail there;
Thomas and Howard then joined Harper outside. The
suspects, noticing Harper's reinforcements, fled across Charles
Street, with the guards and officer in pursuit.

The suspects entered a parking lot of Anthony's banquet

hall to which an ongoing wedding party had brought many cars. The suspects tried to break into a Jeep Cherokee but were again disappointed by the car's alarm. Then they attacked a black Chevrolet Blazer. The defendant jumped into the driver's seat leaving the side door open; at this point his partner ran off into the woods. Officer Howard approached the open door from the rear of the car and ordered the defendant out. The defendant said, "Get the fuck out of here or I'll kill you." Howard drew out his revolver and moved closer to the door. When Howard was "right up to the door,"[1] the defendant lashed out at him with a screw driver. Howard stepped back; the screw driver missed him by six to twelve inches. Now, "suddenly," the car started and went in reverse several feet with the door still open. Howard jumped back to avoid the door, which swiped an adjacent car. The defendant drove forward passing over the curbs of the parking lot and sidewalk and turning right onto Charles Street.

The defendant speeded down Charles Street and ran a red light at the intersection of Charles and Pearl Streets. In the intersection he struck a young man, Kevin Bibeau, who was crossing on Pearl Street on his motorcycle. Bibeau was vaulted up by the collision and fell to the ground with his leg "mangled." The car crashed into a utility pole and ended perpendicular to Charles Street. The defendant fled the car. The further pursuit and ultimate arrest of the defendant are chronicled in the margin.[2]

The defendant was tried and convicted of armed robbery; assault on Howard with a dangerous weapon (the Blazer); at-

---

[1]Thomas said Howard was "just an arm's length away" and Harper said he was "two to three feet away."

[2]An officer, Gary Hennessey, arriving at the site, learned the defendant's direction of flight. On Adams Street, Salvatore Graffeo told him the defendant had run through Graffeo's yard and headed toward Medford. Hennessey followed the trail but without result. Later that day Graffeo, going to the Star Market to shop, spotted the defendant on a bicycle near the entrance. Graffeo asked the store manager to call the police, but after an interval the defendant was still idling. When Graffeo approached him, he rode off on the bicycle across Middlesex Avenue, then dropped the bicycle, and jumped over a fence, and was lost to view. Later still, at 10:00 P.M., Officer Theodore Meroski, conducting a search for the defendant at the Dever Street apartments in southwest Malden near the Medford line, saw a likely man standing between two parked cars. The man ran and disappeared, but a voice from one of the apartments shouted, "He's under the van." Meroski found the defendant there and arrested him.

Kevin Bibeau awoke after a lengthy period of unconsciousness. His right

tempted larceny of a motor vehicle (two counts, Chevrolet van and Jeep Cherokee); leaving the scene of an accident which involved personal injury; leaving the scene of an accident which involved property damage (three counts, damage to the Blazer, motorcycle, and utility pole); and operating a motor vehicle to endanger.[3] On the present appeal, the defendant argues only that, by reason of a failure of proof of the armed robbery, the judge should have allowed the defendant's motion, made at the close of the Commonwealth's case, for a required finding of not guilty of that offense.[4]

The relevant indictment charged that the defendant "being armed with a dangerous weapon, to wit: screwdriver, did assault Paul Howard with intent to rob him, and thereby did rob and steal from the person of said Paul Howard a motor vehicle of the property of said Karen Leach." We take up the elements of the commission of the crime:[5] as to each, the defendant contends there was insufficient evidence to raise a question of fact for the jury.

*Putting in fear.* The contention is that Paul Howard, the Malden police officer, could not reasonably have experienced fear or apprehension[6] when the defendant swung at him with the screwdriver, missing him by a small margin. Howard testified, "I felt threatened. I felt that I was going to be

---

leg had been amputated below the knee. He had suffered other serious injuries.

[3]The defendant came under indictment also for assault and battery with a dangerous weapon (screwdriver) and theft (Blazer). Prior to trial, the judge required an election between proceeding on these charges and on the armed robbery charge. The Commonwealth chose the latter, but the jury were instructed on assault with a dangerous weapon and theft as lesser included offenses.

[4]The judge had denied defendant's pretrial motion to dismiss the armed robbery indictment on the ground that Howard could not figure as victim of the armed robbery.

[5]Here, where the defendant did not commit a battery on Howard, the Commonwealth had to prove elements beyond the simple larceny, namely: "some objectively menacing conduct by the defendant, undertaken to put the victim in fear for the purpose of stealing his property, and resulting in reasonable fear or apprehension on the part of the victim facilitating the theft." *Commonwealth* v. *Marcotte*, 18 Mass. App. Ct. 391, 394 (1984) (citations omitted).

[6]The defendant suggests that "fear" for purposes of the statute should be understood as "intimidation." The courts have more regularly used "fear" or "apprehension." See *Commonwealth* v. *Johnson*, 379 Mass. 177, 181

struck." The defendant's action "startled me, so I stepped back for a moment." At the same time, the defendant was uttering a threat to kill. It is suggested that Howard could not have reacted with fear because he had a superior weapon in hand. The two phenomena were not necessarily incompatible. Indeed the weapon could be discounted because of an officer's natural reluctance to fire it and his schooled forbearance to do so and have later to meet a claim that he used excessive force. Cf. *Julian* v. *Randazzo*, 380 Mass. 391, 396 (1980).

*Facilitating theft.* The fear inspired in Howard made him fall back, and it was in the interval that the defendant "suddenly" started the car, reversed, and leapt forward on the route to the ultimate crash at the intersection. "[T]he nexus between the force or fear and the taking may be relatively loose and yet encompass a robbery." *Commonwealth* v. *Lashway*, 36 Mass. App. Ct. 677, 680 (1994). The nexus here appears tight, for Howard through fear stepped back and was thus disabled to reach the driver's seat and stop or dislodge the defendant. So also Howard's withdrawal in fear could have strengthened the defendant's resolve to make off with the car.

*Victim's relation to object.* Following the statute ("[w]hoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person," G. L. c. 265, § 17, as appearing in St. 1952, c. 406, § 1), the indictment charged the robbing and stealing of a motor vehicle "from the person" of the victim Howard. The defendant questions whether Howard could be found to have such a relation to the Blazer that the hostile taking might be fairly characterized as from his person. In *Commonwealth* v. *Stewart*, 365 Mass. 99, 108 (1974), the defendant and an accomplice entered a supermarket where Iverson, the night manager, and Moore, the meat cutter, were preparing to close the store for the night. The defendant produced a gun, commanded Iverson to take him to the safe, and led Iverson there with the gun to his back; Moore was just shoved along. The defendant and his partner took money from the safe and left the store and eventually were apprehended. The defendant, indicted for the armed robbery of Moore, said it was Iverson, not Moore, from whose person the money was taken. The court wrote:

(1979); *Commonwealth* v. *Marcotte*, 18 Mass. App. Ct. at 394. See also LaFave & Scott, Substantive Criminal Law § 8.11(d)(2), at 450 (1986).

"While the statute, G. L. c. 265, § 17 (see also c. 277, § 39), speaks of taking 'from his [the victim's] person,' this is understood to include the common law conception of taking in a victim's 'presence,' and this in turn is read to cover cases where the victim could have prevented the taking, had he not been intimidated. Thus, if force or threat of force had been applied to a customer remaining in the First National supermarket at closing time who was trying to interpose himself or to call the police, a charge of robbery from that customer with respect to money of First National could have been sustained; a fortiori may a charge of robbery from Moore be sustained, for as an employee he had a duty of loyalty toward his employer and thus some protective concern for the money" (citations omitted).

In the present case Howard acted like the interposing customer in *Stewart*, but as a police officer, bound by a "duty to protect life and property and to preserve the peace," *Commonwealth* v. *Murphy*, 353 Mass. 433, 438 (1968), he had also a "protective concern" for Leach's car. And see *Commonwealth* v. *Levia*, 385 Mass. 345, 349 (1982): "[A]n indictment for armed robbery is sufficient so long as the victim named in the indictment had 'some protective concern' for the property taken, and the property was taken from the victim's person or presence." See also *Commonwealth* v. *Dominico*, 1 Mass. App. Ct. 693, 721-722 (1974); *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. 93, 95-96 (1986); *Commonwealth* v. *Lombard*, 37 Mass. App. Ct. 43, 46 (1994), *S.C.*, 419 Mass. 585 (1995).

*Judgment affirmed.*