Agnes, A.J.
I.INTRODUCTION
The defendant Sixto Fret has been indicted for three armed robberies of Dunkin Donut stores between May 29-31, 2003. He has filed a motion to dismiss the indictments on grounds that the Grand Jury did not hear sufficient evidence that he committed the offenses while “armed with a dangerous weapon.” See G.L.c. 266, §17.
II.FACTS
According to the Grand Jury Minutes (GJ), Detective Bartley of the Worcester Police Department testified that he investigated three incidents in the City of Worcester between May 29-31, 2003. A person later identified as the defendant[1] entered the first store at 845 Main Street on May 29, 2003 at about 12:45 A.M. and simply walked around the counter, opened the register drawer by hitting the “Munchkin key” and took cash from the drawer. “The whole time he kept one hand in his pocket, leading the clerks to believe he had a weapon in that pocket, so they stayed back.” GJ at 4. About seven hours later, the defendant walked into the second Dunkin Donuts store located at 107 Ward Street, Worcester. “He waited in the public area waiting part of the store, and when the door opened he forced his way into the back of the counter, went directly to both registers, opened both registers, again hitting the Munchkin button, taking the cash, and at the same time keeping his hand in his pocket again.” GJ at 4-5. Two days later the defendant accompanied by another male returned to the first Dunkin Donuts store in the early afternoon hours. The clerk appeared to recognize him as the person who had stolen money several days earlier. “Again [he went] right behind the counter, opened the register himself.” GJ at 5. According to detective Bartley, the defendant stated “Just stay back” and pushed one or more employees. GJ at 6. “And again, he kept his hand in his pocket, so they weren’t sure if he had a weapon or not.” GJ at 6.
III.DISCUSSION
1. Standard of Review
“Generally a court will not inquire into the competency or sufficiency of the evidence before the grand jury.” Commonwealth v. Coonan, 428 Mass. 823, 825 (1999). An indictment may be based entirely on hearsay, Commonwealth v. St Pierre, 377 Mass. 650, 654-55, (1979), at least so long as the hearsay is reasonably reliable. Id. at 656. In Commonwealth v. McCarthy, 385 Mass. 160 (1982), the Supreme Judicial Court recognized a narrow exception to that general rule by acknowledging that “at the very least the grand juiy must hear sufficient evidence to establish the identity of the accused, and probable cause to arrest him. A grand juiy finding of probable cause is necessaiy if indictments are to fulfil their traditional function as an effective protection ‘against unfounded criminal prosecutions.’ ” Id. at 163 (quotation omitted). Probable cause is based on “reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed ... an offense.” Commonwealth v. O’Dell, 392 Mass. 445, 450 (1984), quoting Commonwealth v. Stevens, 362 Mass. 24, 26 (1972). However, an indictment is not to be dismissed merely because “the evidence probably would not have been sufficient to overcome a motion for a required finding of not guilty at a trial.” Commonwealth v. O’Dell, supra at 450.
2. Whether the Grand Jury Was Presented with Sufficient Evidence to Return Indictments for Armed Robbery
G.L.c. 265, §17 provides, in part, that “[wjhoever being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money . . . which may be the subject of larceny shall be punished.” At the grand juiy stage, the Commonwealth must establish that there is probable cause to believe that the defendant was (1) armed with a dangerous weapon, (2) took property with the intent to steal, (3) by using actual force or by menacing conduct and (4) took the property from the victim’s person or immediate presence. Robbeiy is an aggravated form of larceny that is differentiated by the additional element *280 of personal violence or intimidation. Commonwealth v. Jones, 362 Mass. 83, 86 (1972), citing Commonwealth v. Novicki, 324 Mass. 461, 464 (1949). Armed robbery is an aggravated form of robbeiy that is characterized by the additional element of possession (though not use) of a dangerous weapon. See Commonwealth v. Tarrant, 367 Mass. 411, 415 (1975) (the purpose of the armed robbery statute is to make robbeiy while possessed of a dangerous weapon a more serious offense); Commonwealth v. Goldman, 5 Mass.App.Ct. 635, 637-38 (1977) (it makes no difference whether the dangerous weapon is concealed or exposed).
In the present case, the defendant’s motion raises two questions — (1) whether the Grand Juiy heard sufficient evidence that the larceny of property from Dunkin Donuts was committed by using actual force or by putting the victim in fear by menacing conduct, and (2) whether they heard sufficient evidence that the defendant was armed with a dangerous weapon.
A. Whether There Is Sufficient Evidence of Actual Force or Menacing Conduct
With regard to the second and third offenses described by Detective Bartley (the 8:00 a.m. incident at 845 Main Street and incident at 107 Ward Street), there was evidence that the defendant pushed his way to the register. This is sufficient to establish that actual force was used. See Commonwealth v. Grassa, 42 Mass.App.Ct. 204, 208 (1997) (robbeiy is accomplished when force is applied to an employee who is in the presence of the properly that is taken). Thus, for two of the three counts, there is sufficient evidence of actual force. There is no evidence of actual force with regard to the first incident at 845 Main Street.
The question is whether the grand juiy heard evidence of menacing conduct with regard to the first incident. Proof that the victim was actually in fear is not required so long as the perpetrator intended to provoke fear and the conduct or instrumentality used could cause a person of average sensibilities to be afraid. Commonwealth v. Tarrant, 367 Mass, at 417, citing Commonwealth v. Slaney, 345 Mass. 135, 140 (1962). Proof of fear-producing, menacing conduct may result from the same evidence that establishes that the defendant was armed with a dangerous weapon. See, e.g., Commonwealth v. Powell, 433 Mass. 399 (2001) (Defendant told the victim to open the register and not to move because he had a gun. The defendant also threatened to shoot the victim. The victim could see very tip of an object protruding from the defendant’s jacket, but couldn’t tell if it was a real gun or a fake. The police later found a wooden replica of a sawed-off shotgun in the vicinity of the crime); Commonwealth v. Tarrant, supra, 367 Mass, at 417 (Defendant said “don’t move’’ and allowed a German shepherd dog to roam freely around the room); Commonwealth v. Nickologines, 322 Mass. 274 (1948) (threat made with an unloaded gun). Here, with regard to the first incident at 845 Main Street, the question becomes whether the defendant’s keeping one hand in his pocket was sufficient to establish the element of menacing conduct.
In Commonwealth v. Delgado, 367 Mass. 432 (1975), the Supreme Judicial Court upheld a conviction for robbery while being armed with a gun on the basis of evidence that the defendant said to a confederate who was holding a knife to the store manager “hold him or I’m going to shoot him.” Id. at 433-34. The defendant conceded the validity of his convictions for armed robbeiy with a knife and assault with a knife, but argued that the requirement of proof that he possessed a gun could not be established by mere evidence of his verbal assertion. Id. at 436. In rejecting his argument, the Court noted that the defendant’s words were both threatening and informational. “In our opinion this was clearly sufficient, particularly in the circumstances of an ongoing robbeiy, to cause the victim reasonable apprehension with respect to his physical security.” Id. at 437.
It could be argued that one who pushes a cashier away from the register and keeps one hand in his pocket which is pointed at the clerk or cashier in a manner suggestive of the possession of a weapon may be regarded as declaring, by his non-verbal gesture, the same message as the defendant in Delgado who spoke aloud about his readiness to shoot. That is not the case here. During the first incident at 845 Main Street, there is no evidence that the defendant used actual force, and no evidence that the defendant made any gesture with the hand in his pocket that created the appearance of a handgun. The mere fact that the defendant had his hand in his pocket when he reached into the cash drawer is not sufficient to establish that the theft was a robbery. Commonwealth v. Davis, 7 Mass.App.Ct. 9, 11 (1979) (force used by a pickpocket to lift and remove the property from the person of the victim “is not of the class of violence essential to robbeiy” even if the victim is aware of the theft at the time of its commission). Contrast Commonwealth v. Zangari, 42 Mass.App.Ct. 931, 932 (1997) (“The force the thief applied in snatching the purse was sufficient to satisfy the force and violence requirement for robbeiy”). See also Commonwealth v. Santos, 440 Mass. 281 (2003) (to constitute the crime of robbeiy, the issue is “whether the use of force or threats (or both) facilitated the taking of the victim’s property in some fashion”). Thus, the absence of any evidence of actual force or menacing conduct with regard to the first incident at 845 Main Street means that the Commonwealth’s presentation is not sufficient to support more than a charge of larceny as to that particular count.
B. Whether There Is Sufficient Evidence of Being Armed with a Gun
The Commonwealth offered evidence of the defendant’s hand in his pocket during each of the three offenses, but no evidence that the defendant said *281 he had a gun or that he actually had a gun. There is no evidence that the defendant pointed his hand at the clerk or cashier in a manner suggestive of the possession of a weapon, or that there was any sort of bulge in his pocket that might be suggestive of a weapon. There is no reported decision in Massachusetts which regards the simple fact of a hand in one’s pocket as sufficient to give rise to an inference that the defendant was armed. Compare People v. Banks, 454 Mich. 469, 563 N.W.2d 200 (1997) (armed robbery not established by evidence that defendant told clerk he was being robbed and, at the same time, held his hand in his pocket but did not point his hand, display any weapon, nor was any bulge or object seen), and People v. Saenz, 411 Mich. 454, 307 N.W.2d 675 (1981) (armed robbery not established by an oral demand for money while the defendant held his hand in his pocket), with People v. Taylor, 245 Mich. 293, 628 N.W.2d 55 (2001) (armed robbery established by evidence that defendant said it was a robbery, that he put his hand inside his jacket and the front of his pants, and that the victim saw a bulge).
In Commonwealth v. Howard, 386 Mass. 607 (1982), the Supreme Judicial Court reviewed and distinguished its decision in Delgado, supra, and held that “where a robber has no instrumentality at all, although he said he had a gun, conviction of armed robbery is not warranted.” Id. at 608. In Howard, the defendant approached the victim on Commonwealth Avenue in Boston during the early morning hours and, with his hand in his pocket, told him to walk straight, look down and “don’t try anything foolish or I’ll pull the trigger.” The defendant was arrested at the scene while the crime was still in progress. In reasoning that under the circumstances a jury could not possibly infer the defendant’s possession of a gun, the court explained:
No gun was found on the defendant or at the place where he was arrested. They could not reasonably infer that the defendant had a gun, but disposed of it before the police arrived. The defendant would have had no reason to dispose of a weapon, if he had had one, before the police suddenly arrived and arrested him. It is the absence of any basis to infer that the defendant may have had a gun that distinguishes this case from Commonwealth v. Delgado, supra, 367 Mass, at 432. As appears from the opinion of the Appeals Court in the Delgado case (2 Mass.App. 865, 866 (1974)), Delgado and three other men entered a grocery store. During the confrontation, the night manager of the grocery store was held at knife point. Delgado said, “Hold him or I’m going to shoot him.” No gun was seen. After the money was taken, the four men ran out of the store. As we noted in our opinion, when the case was before us on further appellate review, no gun was found on Delgado or in the area where he was apprehended. Commonwealth v. Delgado, 367
Mass, at 436. In those circumstances, it was possible that Delgado had a gun and disposed of it. We concluded that “the jury could reasonably conclude that the defendant should be taken at his word.” Id. at 437. In the Delgado case, the jury would have been warranted in finding beyond a reasonable doubt that Delgado had a gun. We do not construe the Delgado case as eliminating the statutory requirement that a defendant have a dangerous weapon but only as holding that the jury were warranted in inferring beyond a reasonable doubt that, in the circumstances, Delgado had a gun. In the case before us, the defendant’s statement alone, implying that he had a gun, where no gun was seen or found and he had no opportunity or reason to dispose of it, cannot be sufficient to warrant a conviction of robbery while “armed with a dangerous weapon.”
Howard, 386 Mass, at 609-10.[2]
A case may arise in which a person’s conduct involving his hand in his pocket is both threatening and informational such as when a pointing gesture is made that appears to be a handgun. In such a case, the argument would continue that if the person flees the scene the jury could infer that the person actually had possession of a gun. However, our appellate courts have always insisted on at least the presence of both threatening words and menacing conduct.[3] See Commonwealth v. Powell, 433 Mass. 399, 403-04 (2001) (“Where, as here, there was evidence that the defendant had an actual object in his possession, it was for the jury to determine whether that object came within the definition of dangerous weapon”); Commonwealth v. Jackson, 419 Mass. 716 (1995) (the combination of the defendant’s words [“I’ll blow you away”] and his conduct [placing his hand in his pocket] was sufficient to permit the jury to infer he was armed with a dangerous weapon); Commonwealth v. Smith, 60 Mass.App. Ct. 204 (2003) (the defendant appeared to conceal an object inside his shirt and then the victim felt a blow from a rigid object, which had the immediate effect of knocking him to the ground and left a round circular mark on his forehead. Jury could infer from the injury that the defendant was armed with a dangerous weapon); Commonwealth v. Simpson, 54 Mass.App.Ct. 477 (2002) (Defendant demanded money from store clerk, and, with her hand out of sight, stated “I have a gun”).
Thus, it is the law in Massachusetts that in order for a defendant to be charged with armed robbery on the basis of a statement about having a gun in circumstances in which there is neither direct evidence of a gun nor evidence of apparent possession of a gun (e.g., a hand in the pocket or under a coat and some indication of the presence of an object), there must be direct evidence that the defendant had possession of an instrumentality that appears reasonably capable of inflicting bodily harm. Commonwealth v. Johnson, 27
*282 Mass.App.Ct. 746, 748 (1989), discussing Commonwealth v. Howard, supra (Defendant’s possession of a hairbrush that he apparently used to simulate a gun by holding it in his hand inside his jacket pocket was sufficient; “[tjhis case handsomely illustrates that it is not just high altitude theory to suppose that an object which is dangerous or, as used, looks dangerous may ignite violence and harm”). See also Commonwealth v. Colon, 52 Mass.App.Ct. 725 (2001) (in a prosecution for armed robbery, evidence that the defendant was armed with and displayed an object “of uncertain size or shape but which appeared to the victim to be a weapon, specifically a gun or knife” was sufficient).
C. Whether the Probable Cause Standard Applicable to the Sufficiency of the Evidence Presented to the Grand Jury Requires Some Evidence on Each Essential Element of the Crime
Even if the facts in Simpson, supra, are distinguishable because there the perpetrator said she had a gun, the Appeals Court nonetheless noted that unlike in the case of errors that occur during a trial jury, the government is only required to meet the probable cause to arrest standard before the grand jury, and that the level of review accorded to “evidentiary irregularities” before the grand jury is correspondingly less intense. “A motion to dismiss an indictment based on evidentiary irregularities before a grand jury does not permit a court [to] review the competency or sufficiency of the evidence.” Simpson, 54 Mass.App.Ct. 477, 480 (2002), quoting Commonwealth v. O’Dell 392 Mass. 445, 450 (1984) (citation omitted).
The grand jury serves a vital purpose in our system of criminal justice by standing between the government and the individual as to any charge that is punishable by imprisonment in state prison. In the words of Chief Justice Shaw, “[t]he right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment of a grand jury, in case of high offenses, is justly regarded as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberties.” Jones v. Robbins, 8 Gray (74 Mass.) 329,344 (1857). The same sentiment was expressed by Chief Justice Rugg in In re Lebowitch, 235 Mass. 357, 361 (1920): “The grand jury as known to the common law always has been regarded as a bulwark of individual liberty and a fundamental protection against despotism and persecution.” It is hard to conceive of how the grand jury could perform this historic function if the government was not required to present evidence as to each and every element of the crime.
Thus, the caution expressed in our cases against reviewing the competency or sufficiency of the evidence presented to the grand jury does not mean that the Commonwealth is relieved of the requirement that the grand jury must receive some evidence of each required element of the crime under consideration. “The standard of sufficiency has been defined as whether the grand jury ‘heard reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense.’ ” Commonwealth v. Goldstein, 54 Mass.App.Ct. 863, 866 (2002), quoting Commonwealth v. McCarthy, supra. Possession of a dangerous weapon is an essential element of armed robbery. See G.L.c. 265, §§17 & 19. If, as in this case, the grand jury is presented with no evidence on an essential element of the crime, it has no basis upon which it may return a valid indictment for that offense.[4] Cf. Commonwealth v. Snow, 269 Mass. 598 (1930) (Defendant cannot be prosecuted on a theory not supported by the evidence presented to the grand jury); Commonwealth v. Brown, 55 Mass.App.Ct. 440 (2002) (Court assumes that in order for an indictment for perjury to be valid there must be corroborative evidence presented to the grand jury).
CONCLUSION
For the above reasons, the defendant’s motion to dismiss is ALLOWED IN PART and DENIED IN PART. The grand jury heard sufficient evidence to support charges for robbery, but not for armed robbery, with respect to the incident at 107 Ward Street in Worcester and the second incident at 845 Main Street. With regard to the count of the indictment relating to the first incident at 845 Main Street, the grand jury heard only sufficient evidence to warrant a charge for the offense of larceny. Accordingly, so much of the three counts of the indictment as charge armed robbery are dismissed and so much of one of the counts relating to the first incident at 845 Main Street charging robbery is dismissed as well. As a result, the Commonwealth may proceed in this case on an indictment charging in one count larceny with regard to the first incident at 845 Main Street and two counts charging robbery with regard to the other incidents.

The identification of the defendant is established by the grand jury testimony of Detective Bartley who interviewed the defendant’s former girlfriend. She came to the police after seeing the defendant’s picture in the newspaper. She was upset with the defendant who was with another woman. She told the police that she was with the defendant who she knew as “Sixto” a/k/a “Shorty” when he stole money from one of the Dunkin Donut stores and that he told her about the other crimes. She said the defendant was a drug addicted person and assumed he used the money to buy drugs. See GJ at 7-14.

In a dissenting opinion in Howard, supra Justice Nolan took an expansive view of the holding in Delgado, supra and viewed the case as falling squarely within that rule. “The defendant, with his hand in his jacket, said that he would ‘pull the trigger’ if the victim did not comply with his demand for money. This declaration of intent or threat in the context of this case is an evidentiary admission from which the jury may infer that he was then carrying a gun. At the least, such a statement, if the jury believe that he made it, should be regarded as ‘enough evidence that could have satisfied a rational trier of fact. . . beyond a reasonable doubt’ that the *283 defendant had a gun.” Howard, supra, 386 Mass, at 619 (Nolan, J. dissenting).

In several carefully reasoned separate opinions, Justice O’Connor argued for a different and stricter interpretation of G.L.c. 265, § 17. Justice O’Connor strongly disagreed with the result in Delgado, supra, and sought to limit the reach of the decision. “In my opinion, we have never held, and we should not announce now, that a defendant’s statement, in the course of a robbery, that he has a gun, together with evidence that he could have disposed of one, warrants a finding that he actually had a gun. Howard, 386 Mass, at 615 (O’Connor, J., concurring). See also Commonwealth v. Jackson, 419 Mass. 716, 734 (1995) (O’Connor, J., dissenting) (“Common experience suggests that a robber who does not have a weapon may say he has one in order to facilitate the robbeiy. This is unlike a defendant’s statement after the crime has been completed, that at the time of the crime he had a weapon. Common experience tells us that ordinarily such an admission is not made unless it is true”). As the cases noted in the text suggest, the Supreme Judicial Court has not adopted this view.
Actually, Justice O’Connor goes much further in his concurring opinion in Howard, supra “Just as we must not construe ‘being armed with a dangerous weapon’ to mean ‘being or apparently being armed with a dangerous weapon,’ so, too, we must not construe it to mean ‘being armed with a dangerous or apparently dangerous weapon.’ Consequently, in addition to overruling Delgado, I would overrule Tarrant Similarly, we should not read G.L.c. 265, §15B, which proscribes assault ‘by means of a dangerous weapon,’ to include assault by means of an apparently dangerous weapon. Therefore I would also overrule Henson. To the extent that Commonwealth v. Appleby, 380 Mass. 296 (1980), and Commonwealth v. Perry, 6 Mass.App. 531 (1978), are at variance with this concurrence, I would overrule them. I would announce that henceforth, unless the Legislature amends G.L.c. 265, §17, robbeiy is unarmed unless the defendant possesses an inherently dangerous instrumentality, Commonwealth v. Mowry, 11 Allen 20 (1865), or an instrumentality that was used to produce serious bodily harm, see Commonwealth v. Farrell, 322 Mass. 606, 615 (1948), or the attempt, or threat, ingredient of the robbeiy was by means of an instrumentality capable of producing serious bodily harm in the manner attempted or threatened. I would announce that henceforth, unless the Legislature amends G.L.c. 265, §15B, for assault ‘by means of a dangerous weapon,’ the attempted, or threatened, batteiy must be by means of an instrumentality that is inherently dangerous or is capable of producing serious bodily harm in the manner attempted or threatened. To go beyond such construction is to violate the rule of strict construction of criminal statutes.” 386 Mass, at 617-18.

In a different context, the New Jersey Supreme Court recently held, as a matter of state constitutional law, that for an indictment to be valid the State must present to the grand jury proof to support eveiy element of the offense. State v. Fortin, 2004WL *190051 (February 3,2004), clarified by 2004 WL *229875 (February 6, 2004) (holding prospectively that the grand juiy must hear evidence of the aggravating factors that expose the defendant to the death penalty in order for the state to seek that penalty at trial).