NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-618

COMMONWEALTH

vs.

ANGEL GONZALEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant was convicted of unarmed robbery of a person aged sixty or over in violation of G. L. c. 265, § 19 (a); larceny over $250 from a person aged sixty or over in violation of G. L. c. 266, § 30 (5); and larceny from a person aged sixty-five or over in violation of G. L. c. 266, § 25 (a).  All three convictions were based on a snatching of the victim's purse from her shopping cart.  On appeal, the defendant challenges the sufficiency of the evidence identifying him as the thief and that the theft was accomplished by force or intimidation.  He also challenges the propriety of the prosecutor's closing argument.

We agree that there was insufficient evidence that the theft was accomplished by force or intimidation, and therefore, the defendant's robbery conviction cannot stand.  There was sufficient evidence of two lesser included offenses, of which the defendant was convicted, as well as larceny from a person in violation of G. L. c. 266, § 25 (b).  In the normal course, we would vacate the robbery conviction and remand for entry of a conviction of larceny from a person and resentencing.  Commonwealth v. Waterman, 98 Mass. App. Ct. 651, 654 (2020), and cases cited.  But based on the cumulative effect of the errors in the prosecutor's closing argument, we conclude that all three convictions must be vacated, and the case remanded for a new trial, with trial of the unarmed robbery charge limited to the lesser included offense of G. L. c. 266, § 25 (b).

Background.  On November 12, 2021, the victim, Denise Lindsey, age sixty-seven, was exiting a Big Y grocery store in Springfield at approximately 10 A.M.  She was pushing a shopping cart containing her groceries and her purse, which she had placed in the "seat part" of the cart.  She paused before exiting the store because it was raining heavily, and then felt someone "c[o]me along side of" her.  She turned and "looked pretty much eye to eye" with the person to her side.  When she returned to looking at her cart, her pocketbook was gone, and the man was "taking off with [her] pocketbook in hand."  She

2

explained the feeling of the thief's touch as a "brushing along [her] shoulder": "you know when you're exiting . . . sometimes people just, like, brush you . . . it was nothing . . . I just felt, like, . . . somebody brush by me." After the theft, she ran after the thief to get her purse back but did not catch him. The victim described the thief as wearing a hood, being around five feet, eight or nine inches tall, with brown eyes and brown-black circles under his eyes.[1] She described the thief's skin as "dark."

At trial, the Commonwealth introduced Big Y surveillance video footage, which captured the November 12 theft. The video footage depicts a man wearing a black hooded sweatshirt with the hood raised and a red baseball cap. The video captures him both facing the camera and in profile. His face is visible in both instances. The video also captures him approaching the victim from behind, grabbing her purse, and fleeing.

Police arrested the defendant on November 29, 2021, video recorded an interview of him and took photographs of him. The Commonwealth introduced a redacted portion of the interview video footage and the photographs. Detective Adames testified

---

[1] Registry of Motor Vehicles records stated that the defendant was five feet eleven inches tall.

that the defendant's appearance on the day of trial had changed because the defendant appeared to have gained some weight.

The Commonwealth also presented evidence that the November 12, 2021, purse snatching was the first such crime in a series of four purse snatchings in the area that occurred between November 12 and November 18, 2021.[2]

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty (presumably as to all charges), which the judge denied. The defendant then testified and denied that he was at the Big Y in Springfield on November 12, 2021. He described himself as "thin" at the time and estimated he had gained between twenty and thirty pounds since being arrested. At the close of all the evidence, the defendant renewed his motion for a required finding of not guilty, which the judge again denied. The defendant timely appealed.

Discussion. 1. Sufficiency of the evidence. The defendant contends that the Commonwealth failed to prove unarmed robbery because the evidence (1) did not show that he was the perpetrator and (2) did not show that the theft of the purse was

---

[2] A cooperating witness named Derek Michalczyk testified that he committed three of the charged purse snatchings with the defendant between November 16 and November 18, 2021, but was not involved in and did not testify regarding the crime committed in the present case, which occurred on November 12, 2021. The jury acquitted the defendant of the three crimes committed between November 16 and November 18.

4

accomplished by force or intimidation.  In both instances, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

a.  Sufficiency of the evidence that the defendant was the purse snatcher.  The jury were able to observe the Big Y surveillance video footage of the crime and compare it to the video recording of the defendant's interrogation, his booking photographs taken seventeen days after the crime, and his appearance in the courtroom over the course of the trial.  "The jury could assess for themselves any points of similarity . . . between the various images in evidence and the person present in the court room."  Commonwealth v. Phillips, 495 Mass. 491, 495 (2025).  See also Commonwealth v. Belnavis, 104 Mass. App. Ct. 798, 802 (2024) ("Where there is no testifying percipient witness and the defendant is to be identified from a video recording or photograph, that is usually a task for the jury, which is qualified to compare the video recording or photograph to the defendant sitting in court").  Contrary to the defendant's argument, the defendant appears to have a similar skin tone and facial hair to the thief.  Though the defendant makes a plausible argument that the profile of his nose is

5

different than the thief's as depicted in the surveillance video footage, a rational trier of fact could have rejected this claim.[3]  Indeed, in his interview, the defendant admitted that the thief looked like him.  Accordingly, viewing the evidence in the light most favorable to the Commonwealth, a rational trier of fact could have found that the defendant matched the appearance of the person who committed the Big Y theft.

b.  Sufficiency of the evidence that the thief used force or intimidation.  To find the defendant guilty of unarmed robbery of a person sixty years or older, the jury had to find beyond a reasonable doubt that the theft of the purse was accomplished "by force and violence, or by assault and putting [the victim] in fear."  G. L. c. 265, § 19 (a).[4]

The Supreme Judicial Court has addressed this aspect of the robbery statute in the context of purse snatchings:

> "The exertion of force, actual or constructive, remains the principal distinguishing characteristic of the offence.  Because the requirement is stated in the disjunctive, if there is actual force, there need be no fear (constructive force), and vice versa.  Whether actual or constructive force is employed, the degree of force is immaterial so long as it is sufficient to obtain the victim's property against [her] will. Similarly, in every case there must be a causal

---

[3] Defense counsel explicitly drew the jury's attention to this point in her closing argument, so the jury had the opportunity to consider and reject that point.

[4] The same is true for unarmed robbery not aggravated by the victim's age, G. L. c. 265, § 19 (b).

6

connection between the defendant's use of violence or intimidation and his acquisition of the victim's property.

"In a snatching or sudden taking, so long as the victim is aware of the application of force which relieves [her] of [her] property, the crime is, at least to some degree, against . . . [the victim's] will. Clearly, more is involved than in a mere stealthy taking where the victim has no present realization of the theft." (Emphasis added; quotations, citations, and footnote omitted.)

Commonwealth v. Jones, 362 Mass. 83, 87, 89 (1972). Moreover, "[t]o prove that a robbery was committed 'by assault and putting in fear,' the Commonwealth must establish actual fear or apprehension on the part of the victim." Commonwealth v. Garrett, 473 Mass. 257, 267 (2015), quoting G. L. c. 265, § 19 (b).

On this record, no reasonable juror could conclude beyond a reasonable doubt that the thief used actual or constructive force to steal the purse. At most, as the surveillance video footage corroborates, he may have "brushed" the victim. But as she stated, "it was nothing." To the extent that this brushing conveyed an awareness of the "application of force," it did not convey a "present realization of the theft." Jones, 362 Mass. at 89. The victim testified that she did not "notice anything" until she looked back at her cart and realized her pocketbook was gone. There was no evidence that the victim experienced any fear, anxiety or apprehension either leading up to or during the

7

theft. Therefore, no reasonable juror could have concluded that she was "aware of the application of force which relieve[d] [her] of [her] property," id., or that she experienced "actual fear or apprehension," Garrett, 473 Mass. at 267, at least prior to the point that the thief had stolen her purse. Such a showing was necessary for the Commonwealth to sustain its burden of proof. See Commonwealth v. Joyner, 467 Mass. 176, 187 (2014); Commonwealth v. Zangari, 42 Mass. App. Ct. 931, 932-933 (1997). Accordingly, we must vacate the robbery conviction, set aside the verdict, and order entry of a verdict for the defendant on the portion of the charge alleging "force and violence" or "assault and putting [the victim] in fear." See G. L. c. 265, § 19 (a), (b). If the Commonwealth decides to retry the defendant, it may only be on the remaining portion of the charge, alleging larceny from a person.

2. The prosecutor's closing argument. On appeal, the defendant argues that the prosecutor committed multiple errors in her closing argument, which deprived him of due process of law and a fair trial. We briefly recount those statements here.

First, the prosecutor argued: "[T]here is zero evidence before you that these crimes continued after the defendant's arrest. There is simply no evidence of that." In fact, there was no evidence one way or the other as to whether purse snatchings continued after the defendant's arrest. On appeal,

8

the Commonwealth concedes that the prosecutor misstated the evidence.

Second, in response to the defendant's assertion that there was no corroboration that the thief depicted in the surveillance video footage was the defendant, the prosecutor argued: "All of the accounts of the robberies, all of them were corroborated by Derek Michalczyk. All of them." In fact, Michalczyk testified that the defendant helped perpetrate three other purse snatchings, but did not testify about the defendant's involvement in the Big Y purse snatching. Again, the Commonwealth concedes that the prosecutor misstated the evidence.

Third, following the judge's ruling that the prosecutor could not elicit testimony comparing the defendant's height to her own,[5] the prosecutor asserted in closing argument by hand gesture that the defendant was "[j]ust a bit taller than [her]."[6]

---

[5] In support of this ruling, the judge noted that the prosecutor's height was not in evidence.

[6] The Commonwealth asserts that notwithstanding the judge's ruling, this was fair comment based on the videotaped deposition testimony of another victim of a different crime, that the thief who stole her pocketbook was "Maybe [the prosecutor's] height or a bit taller."

9

The defendant objected to each of these arguments and asked for specific curative instructions.  The judge denied that request.[7]

We agree that the prosecutor's arguments were not supported by the evidence and therefore were error.  See Commonwealth v. Rutherford, 476 Mass. 639, 643 (2017) ("closing arguments must be limited to facts in evidence and the fair inferences that may be drawn from those facts").  See also Commonwealth v. Niemic, 483 Mass. 571, 592 (2019) ("a prosecutor may not argue facts not in evidence or misstate the evidence").  The question then is whether the errors were prejudicial.

> "Where, as here, the prosecutor argued facts in closing argument that find no support in the evidence at trial and where that error is preserved by a timely objection, the error is nonprejudicial only if we are sure that the error did not influence the jury, or had but very slight effect" (quotation and citation omitted).

Commonwealth v. Tate, 486 Mass. 663, 669 (2021).  In addition to whether the defendant timely objected, the other factors that determine whether an error in closing argument requires reversal

---

[7] The defendant also challenges the following statement: "although it's not an element of any of the charges, [the defendant took the victims' purses from them] without remorse and without concern for these women."  The defendant did not object to this statement at trial.  Because the judge gave an effective curative instruction that the jury must not to be swayed by appeals to sympathy or emotion, this statement did not prejudice the defendant.

are:  "[1] whether the error was limited to collateral issues or went to the heart of the case; [2] what specific or general instructions the judge gave the jury which may have mitigated the mistake; and [3] whether the error, in the circumstances, possibly made a difference in the jury's conclusions" (citation omitted).  Id.  "[T]he entire record, including the balance of the prosecutor's argument, [is] relevant in determining whether the error was prejudicial to the point of requiring a reversal of the conviction" (citation omitted).  Id.  See Commonwealth v. Silva-Santiago, 453 Mass. 782, 807 (2009) (errors in prosecutor's closing must be "viewed collectively").

Applying the factors relevant to the prejudice analysis, we first note that all of the errors "went to the heart of the case" (citation omitted).  Tate, 486 Mass. at 669. Misstatements of the evidence that "[go] to the heart of the case" are particularly prejudicial.  Silva-Santiago, 453 Mass. at 808.  The primary issue was the defendant's identity as the thief.  The defendant explicitly denied that he was present at the scene on the date of the crime.  All the prosecutor's misstatements went against that claim and supported her argument that the defendant was the thief.

The prosecutor's first misstatement -- "there is zero evidence before you that these crimes continued after the defendant's arrest" -- was especially problematic because it

11

implicated burden-shifting. The defendant had no burden to present any evidence at all, including evidence that purse snatchings continued in the area after the defendant's arrest. See Mass. G. Evid. § 1113(b)(3)(E) (2025). See also Commonwealth v. Amirault, 404 Mass. 221, 240 (1989) ("A prosecutor . . . cannot make statements that shift the burden of proof from the Commonwealth to the defendant"); Commonwealth v. Matos, 95 Mass. App. Ct. 343, 352-353 (2019) ("The defendant had no burden to disprove the Commonwealth's evidence . . .; the burden always remains with the Commonwealth, whether or not the defendant disputes the Commonwealth's evidence"). But the jury may have improperly relied on the prosecutor's assertion -- to which the defense could not respond -- as affirmative evidence that the defendant committed the crime.

Additionally, the magnitude of the error in the prosecutor's third misstatement of fact, indicating with a hand gesture that the defendant was "[j]ust a bit taller than me," was exacerbated by the fact that the judge had explicitly precluded such a comparison. See Commonwealth v. Burke, 373 Mass. 569, 575 (1977) ("No attorney shall refer in closing argument to evidence which has been excluded. . . . Failure to

12

abide by this standard constitutes ground for reversal. . . .
The correctness of the judge's ruling is irrelevant").[8]

Applying the second factor in the prejudice analysis, we note that the judge refused the defendant's explicit request for specific instructions to address these misstatements of fact. The judge did not, for example, clarify that a lack of evidence about whether similar crimes continued after the defendant's arrest is not the same as affirmative evidence that such crimes stopped.  Nor did the judge warn the jury to be "careful in comparing their memory of [Michalczyk]'s testimony with the attorneys' characterization of it."  Silva-Santiago, 453 Mass. at 808.  The judge did give a general instruction that "it's how you saw the evidence and how you find the evidence, not how either attorney suggested to you you should find the evidence" and, later, that "[e]vidence is not the opening or closing statements of counsel."  But we doubt that such general instructions were effective in addressing the prosecutor's erroneous assertions.  See Commonwealth v. Santiago, 425 Mass.

_____

[8] We acknowledge that there were grounds for some confusion about this point.  As explained in note 5, supra, prior to the judge's ruling, the prosecutor had introduced a videotaped deposition of another victim, who compared the thief's height to the prosecutor's height without objection.  We note, however, that the judge's ruling should have alerted the prosecutor not to compare the thief's height to her own height in her closing argument.

13

491, 501 (1997) (reversal warranted where general instruction that opening statements and closing arguments of counsel are not evidence was not adequate to cure prosecutor's errors).

The judge also instructed the jury that the Commonwealth had the burden of proof and that the defendant "did not have to explain anything." But this instruction did not focus on the danger that the prosecutor's reliance on a lack of evidence created -- that the jury might conflate absence of evidence with evidence of absence (i.e. affirmative evidence that the purse snatchings stopped after the defendant's arrest).

Third, we consider "whether the error, in the circumstances, possibly made a difference in the jury's conclusions" (citation omitted). Tate, 486 Mass. at 669. The Big Y surveillance videos captured the thief's face and profile. The jury were in the best position to compare those images to the images of the defendant and determine whether the defendant's appearance matched the thief's. Phillips, 495 Mass. at 495. Also, while the prosecutor erroneously claimed that Derek Michalczyk corroborated the defendant's involvement in every purse snatching, the jury acquitted the defendant of every crime Michalczyk claimed he did commit. This supports an inference that Michalczyk's accusatory testimony -- and the prosecutor's suggestion it corroborated the defendant's involvement -- was immaterial to the jury.

14

But the Commonwealth offered very little corroboration for the identification evidence relating to the November 12, 2021, theft.  No eyewitnesses to the crime identified the defendant as the purse snatcher in an out-of-court identification procedure or in court.  No one who knew him identified him in the surveillance video footage.[9]

Furthermore, the surveillance video evidence indicated that the thief, who appeared to be wearing "chunky boots," was "barely taller" than the victim.  The victim testified that they looked at each other, "eye to eye," and estimated that the thief was "just a little taller than [her], which is, like, probably 5'9", 5'8."  Registry of Motor Vehicles records stated that the defendant was 5'11".  Also, as the defense argued to the jury, the profile of the thief's nose in the surveillance video footage appears different from the profile of his nose in his side-angle booking photograph.

In considering "whether the error[s], in the circumstances, possibly made a difference in the jury's conclusions" (citation

---

[9] Moreover, there was no evidence that the property in the purse was found in the defendant's possession.  There was no evidence that he used the victim's stolen debit card, even though she reported it was used the day after it was stolen.  There was no deoxyribonucleic acid (DNA) or fingerprint evidence linking the defendant to the crime, even though the police had identified the car the thief had fled in.  There was no cellular telephone location evidence placing the defendant near the scene of the crime, even though the Commonwealth knew that he had a cell phone.

omitted; emphasis added), Tate, 486 Mass. at 669, we must consider all the errors in the prosecutor's closing "collectively." Silva-Santiago, 453 Mass. at 807. Considering the errors collectively, we conclude that they "possibly made a difference in the jury's conclusions" given the judge's failure to provide specific curative instructions on each statement, the lack of corroboration for the identification evidence, and the questionable reliability of that identification evidence. See Niemic, 483 Mass. at 595.

Conclusion. On the charge of unarmed robbery, the judgment is vacated. So much of the verdict on that charge as finds the defendant guilty of the lesser included offense of larceny from a person is set aside, and the defendant may be retried on that portion of the charge; on the remaining portion of the charge ("force and violence" or "assault and putting [the victim] in fear"), a verdict shall enter for the defendant. On the charges of larceny over $250 from a person aged sixty or over and larceny from a person aged sixty-five or over, the judgments are

16

vacated, the verdicts are set aside, and the defendant may be retried.

So ordered.

By the Court (Neyman, Shin & Wood, JJ.[10]),

*Paul Little*

Clerk

Entered:  May 1, 2025.

---

[10] The panelists are listed in order of seniority.